ARKANSAS HEARING INSTRUMENT DISPENSER BOARD
*v.* O. G. VANCE

03-1365                                                        197 S.W.3d 495

Supreme Court of Arkansas
Opinion delivered November 4, 2004

*Mike Beebe*, Att'y Gen., by: *Warren T. Readnour*, Ass't Att'y Gen., for appellant.

*Holly Lodge Meyer*, for appellee.

RAY THORNTON, Justice. Appellant, Arkansas Hearing Instrument Dispenser Board ("Board"), appeals from a circuit court order reversing the findings of the Board and concluding that there was not substantial evidence to support the Board's findings of violations of two standards of conduct and that the disciplinary procedures violated the rights of appellee, O. G. Vance, to due process. We affirm the Board.

We review the Board's decision and not the decision of the circuit court. *Ford Motor Co. v. Arkansas Motor Vehicle Commissions*, 357 Ark. 125, 161 S.W.3d 788 (2004). We look to see if there is substantial evidence to support the finding of the board, giving the most probative weight to the evidence in favor of the board's determination and look to the entire record in this determination. *Id.* Substantial evidence means valid, legal, and persuasive evidence such that a reasonable person might accept it as adequate to support the conclusion. *Id.* The Board's decision must not be arbitrary, capricious, or characterized by an abuse of discretion. *Id.* When an agency's determination is supported by substantial evidence, the decision cannot be arbitrary or unreasonable. *Id.*

Under our standard of review, our inquiry is whether there was substantial evidence to support the findings below. The Board's findings of fact were:

> 1. On or about January 12, 1999, [O.G. Vance], a licensed Hearing Instrument Dispenser, sold programmable hearing aids to Mary Sue Carrington. In making the sale to Ms. Carrington, [Vance] represented that, in order to use a $300 coupon, she had to purchase the hearing instruments that day, January 12, 1999, rather than the next day, January 13, 1999, despite the fact that Ms.

Carrington had a coupon for $300 off any programmable hearing aid that was valid until January 13, 1999.

2. In the course of making the sale to Ms. Carrington described above, [Vance] represented to her that the computer programmable hearing instruments were much better than the other type of hearing aids and that the other types were inferior and becoming obsolete so that he would not be able to get parts for them in a few years. Ms. Carrington experienced numerous problems with the hearing instruments, and when the problems could not be corrected; [Vance] suggested fitting Ms. Carrington with non-computer programmable aids which he had previously represented to her as inferior and becoming obsolete.

In making its findings of fact, the Board relied on the following direct testimony of Ms. Carrington:

Q. Ma'am, did you have occasion to purchase a hearing instrument from Mr. O.G. Vance?

A. Yes, ma'am. After he made the evaluation, he said I had lost forty-three to forty-eight percent in each ear.

Q. Did this happen on or around January 12th of 1999?

A. January the 12th, yes.

Q. Okay. Tell me how you came to visit Mr. Vance's office that day.

A. I received a brochure in the mail making these offers with those coupons. And I felt since I needed one, I would go and have the — get the evaluation.

\* \* \*

Q. And what was the substance of your conversation with [Mr. Vance's receptionist]?

A. Well, I showed her the coupon and told her that I had come in for the evaluation.

Q. Had you worn hearing aids before, ma'am?

A. No, ma'am.

Q. So, when you told [Mr. Vance's receptionist] that you wanted an evaluation, what did she — what action did she take?

A. Mr. Vance came forward and took me on back and made the evaluation.

* * *

And I just asked him after he made the evaluation if I could wait and think about it overnight and let him know the next day since the coupon was good through the 13th. And [he] said he needed to know that day. Well . . . he said, You saw the gentleman that stuck his head in the door. And he said, I need to know while he's still here. I said, but your coupon says good through the 13th, which is tomorrow. So that's — and in order to save the $300, I went ahead and had the impression made and made the down payment.

Mr. Vance claimed that he was offering Ms. Carrington an additional $300.00 by paying her sales tax if she agreed to purchase a hearing instrument on January 12th instead of January 13th. With regard to that claim, Ms. Carrington testified as follows:

Q. Ms. Carrington, did Mr. Vance explain to you why you could only get the sales tax discount on January 12th and not on January 13th?

A. No, he didn't.

■ ▇ Based upon the testimony of Ms. Carrington, we conclude that there was substantial evidence to support the Board's findings of fact that Mr. Vance, in making a sale to Ms. Carrington, represented that she had to purchase a hearing instrument on January 12th to receive the discount from the coupon that was valid until January 13th.

We now turn to an examination of the evidence in support of the Board's finding of fact relating to the greater reliability of programmable hearing instruments, the limited availability of repair parts for older instruments, and the evidence that Ms. Carrington experienced difficulty with her new hearing aids.

We do not look to see if the evidence would support any other finding, but only whether there is substantial evidence under the Administrative Procedure Act, Ark. Code Ann. § 25-15-201 *et*

*seq.*, to support the board's finding. *Ark. Bd. of Exam'rs in Counseling v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998). We recognize that administrative agencies are more capable through specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies. *Ford Motor Co.*, *supra*. Furthermore, it is the prerogative of an agency to believe or disbelieve any witness and to decide what weight to give the evidence. *McQuay v. Ark. State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 466 (1999).

■ The Board heard testimony from Ms. Carrington about what transpired when she received her hearing instruments on February 5th. She stated that soon after she left Mr. Vance's office, she began feeling a pressure in her ear and that she had to return to Mr. Vance's office because of the pain the hearing instrument caused. She testified that the instruments were making a static popping sound. When Ms. Carrington returned to Mr. Vance's office, the receptionist trimmed the contours of the instruments slightly. Ms. Carrington testified that she continued to hear interference with the instrument and that the discomfort continued as well. Furthermore, when Ms. Carrington met with Mr. Vance on March 18, 1999, he told her that she should not switch to analog hearing aids because she would be displeased with those instruments and that they would not be produced much longer. Ms. Carrington testified that she continued to experience problems with her instruments, and after three trips to Mr. Vance's office within one week, she went to the South Arkansas Ear, Nose, and Throat Clinic on August 16, 1999. The doctor who examined her wrote a letter stating that the hearing instruments were causing three ulcers in her left ear and wrote two prescriptions. Upon review of the evidence presented to the Board, we cannot say that there was insufficient evidence upon which the Board could base its findings of fact. We conclude that the Board's findings of fact on this question are supported by substantial evidence.

We turn to the challenges based upon the constitutionality of the term, "unethical conduct," in Ark. Code Ann. § 17-84-101 (Supp. 1999) and the standards for disciplinary proceedings and sanctions under Ark. Code Ann. § 17-84-308 (Supp. 1999). First, Mr. Vance challenges the statutory use of "unethical conduct" as being void for vagueness by failing to give a reasonable person of ordinary intelligence notice as to what actions are prohibited. Secondly, he challenges Ark. Code Ann. § 17-84-308 as a due-

process violation for failing to give any guidance in the execution of discretionary powers delegated to the Board.

We review issues of statutory interpretation *de novo*, as it is for this court to determine statutory meaning. *Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001). A statute is presumed to be constitutional and we will resolve any doubts about the statute in favor of constitutionality. *Night Clubs, Inc. v. Fort Smith Planning Comm'n*, 336 Ark. 130, 984 S.W.2d 418 (1999). When interpreting statutes, we will construe all statutes relevant to the subject matter and derive the meaning of an act from a holistic reading. *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2000); *see also Stivers v. State*, 354 Ark. 140, 118 S.W.3d 558 (2003). When possible, we will construe a statute with a limiting interpretation to preserve the constitutionality of the statute. *See Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1996).

When analyzing statutes for constitutionality, we presume the constitutionality of the statute and it is the burden of the party challenging the statute to show unconstitutionality. *Night Clubs, Inc., supra.* If we can construe a statute as constitutional, we will do so provided that such a construction does not contravene the intent of the legislature. *Cockrell v. Union Planters Bank*, 359 Ark. 8, 194 S.W.3d 178 (2004). A statute is void for vagueness under the due-process clause when it does not provide the person of ordinary intelligence a fair notice of what is prohibited under the statute when measured by common understanding or practice. *Night Clubs, Inc., supra.* Furthermore, when a statute merely regulates business activity, it will be given greater leeway in a constitutional analysis than one that affects a fundamental right. *Craft v. City of Fort Smith*, 335 Ark. 417, 984 S.W.2d 22 (1998).

Turning to the first constitutional challenge, Mr. Vance claims that the governing statutes are void for vagueness. Specifically, he alleges that "unethical conduct" is a phrase so vague that a person of ordinary intelligence would not have fair notice that action contemplated was against the statute. We disagree. Unethical conduct is defined in Ark. Code Ann. § 17-84-101(8) as:

(8) "Unethical conduct" includes, but is not limited to:

    (A) Obtaining any fee or making any sale by fraud or misrepresentation;

    (B) Employing directly or indirectly any un-licensed person to perform any work covered by this chapter;

(C) Using or causing or promoting the use of any advertising matter, promotional literature, testimonial, guarantee, warranty, label, brand, insignia, or any other representation, however made, which is misleading or untruthful;

(D) Advertising a particular model, type, or kind of hearing instrument for sale when prospective purchasers responding to the advertisement can not purchase or are dissuaded from purchasing the advertised model, type, or kind if the purpose of the advertisement is to obtain prospects for the sale of a model, type, or kind other than advertised.

(E) Falsely representing that the services or advice of a person licensed to practice medicine will be used or made available in the selection, fitting, adjustment, maintenance or repair of hearing instruments or using words "doctor," "audiologist," or "clinic" or like word, abbreviations, or symbols which suggest the medical profession when such use is not accurate;

(F) Permitting another to use holder's license or internship or certificate;

(G) In any manner, making false representations concerning a competitor or his products, business methods, selling prices, value, credit terms, policies, services, reliability, ability to perform contracts, credit standing, integrity, or morals;

(H) In any manner, using, imitating, or simulating the trademark, trade name, corporate name, brand, model name, or number or label of any competitor, manufacturer, or product when it implies or represents a relationship that does not exist;

(I) Obtaining information concerning the business of a competitor by bribery of any employee or agent of the competitor, by the impersonation of one in authority, or by any other unfair or deceptive means; and

(J) Directly or indirectly giving or offering to give anything of value to any person who advises others in a professional

capacity as an inducement to influence others to purchase products sold by a hearing instrument dispenser or to refrain from dealing with a competitor.

Ark. Code Ann. § 17-84-101(8).

■ These provisions make it clear that there is ample guidance for the reasonable person in determining whether a course of conduct is ethical or unethical under the governing statutes. We have held that a statute is not required to be precise to give notice as to what conduct is prohibited. *Davis v. Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979) (citing *Jordan v. DeGeorge*, 341 U.S. 223 (1951)). We have previously stated that terms such as "unprofessional conduct" and "unethical conduct" are susceptible to a plain language understanding by a reasonable person. *Buhr v. Bd. of Chiropractic Examn'rs*, 261 Ark. 319, 547 S.W.2d 762 (1977). We have also noted that the term, "unprofessional conduct," is not void for vagueness because it fails to proscribe specific types of conduct. *See, e.g. Cambiano v. Neal*, 352 Ark. 691, 35 S.W.3d 792 (2000) Furthermore, this is a statute that regulates business conduct and not a fundamental right and, as such, is held to a more forgiving standard in constitutional challenges. *Craft, supra.*

■ ■ Although Mr. Vance argues that the results of the Board's determination will impact more than just his professional life, he fails to cite any authority for holding a statute primarily concerned with regulating business activities as involving fundamental rights. We will not consider issues unsupported by citation to authority or convincing arguments. *Spears v. Spears*, 339 Ark. 162, 3 S.W.3d 691 (1999). Mr. Vance fails to offer any authority for his proposition that the statute regulates a fundamental right. Accordingly, we will not address the issue of whether a business activity or a fundamental right is being regulated. As a statute that regulates business activity, Ark. Code Ann. § 17-84-101 is given greater leeway in a constitutional challenge for vagueness. When coupled with our previous holdings that terms such as "unethical conduct" and "unprofessional conduct" are susceptible to a plain understanding by the reasonable person, and appellant's challenge fails. Thus, we conclude that Ark. Code Ann. § 17-84-101 is constitutional, giving ample guidance to the reasonable hearing instrument dispenser.

■ Appellant also challenges Ark. Code Ann. § 17-84-308 as a violation of due-process rights by granting unfettered and unregulated discretion to the Board in its disciplinary proceedings. This constitutional challenge is moot. Mootness occurs when a judicial decision would be of no practical effect on the legal controversy. *Eldridge v. Abramson*, 356 Ark. 358, 149 S.W.3d 882 (2004). In this case, while the Board did find Vance in violation of the prohibition against unethical conduct and such a finding was a punishment for the offense found, the Board chose not to impose a monetary sanction, suspend Vance's license, or revoke Vance's license. Vance's argument that the Board had been given unconstitutional discretion need not be reached since the Board did not impose one of the penalties that Vance claimed was subject to an unconstitutional grant of discretion. We note that the statute has since been amended by the legislature to provide a specific cap of $2,000.00 on any civil penalties assessed. The challenge to the breadth of discretion found in the earlier statute is moot.

We conclude that the Board's decision is supported by substantial evidence. Additionally, we conclude that the term, "unethical conduct," in Arkansas Code Annotated § 17-84-101 is not void for vagueness. Furthermore, because the Board failed to impose any monetary sanctions or to suspend or revoke Vance's license we find no merit in appellant's challenge to the level of discretion allowed in imposition of sanctions.

Circuit court reversed; Board affirmed.