ARKANSAS DEPARTMENT of CORRECTION *v.*
Jeremy Eli BAILEY

06-674 247 S.W.3d 851

Supreme Court of Arkansas
Opinion delivered January 25, 2007

[Rehearing denied March 1, 2007.]

*Mike Beebe*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Jerry J. Sallings* and *Caley B. Vo*, for appellee.

Tom Glaze, Justice. This appeal presents a constitutional challenge to the Arkansas Sex Offender Registration Act,

Ark. Code Ann. § 12-12-901 *et seq.* (Repl. 2003 & Supp. 2005) ("the Act"). Appellee Jeremy Bailey was charged with rape and kidnapping on October 3, 2000; the charges stemmed from an incident that spanned the night of September 2-3, 2000, in which Bailey, among other things, stabbed the victim inside her vagina with a knife.

Following the arrest, Bailey was admitted to the Arkansas State Hospital for evaluation on December 20, 2001. On August 28, 2002, Michael Simon, Ph.D., wrote to the Pope County Circuit Court that Bailey had been admitted "for detention, care, and treatment until restored to reason and fit to proceed." In that letter, Simon noted that Bailey had been diagnosed with schizoaffective disorder, bipolar type, but that he had improved with treatment "sufficient to meet minimal requirements for fitness to proceed." However, Simon opined that, at the time of the offense, Bailey lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law; Simon further commented that Bailey remained affected by his mental disease and still posed a risk of harm to others. As such, Simon recommended that the court acquit Bailey and return him to the State Hospital "for continued detention, care, and treatment."

On December 10, 2002, the Pope County Circuit Court entered an order acquitting Bailey by reason of mental disease or defect, pursuant to Ark. Code Ann. § 5-2-313 (Repl. 1997). The court further committed Bailey to the custody of the Director of the Department of Human Services for further examination, evaluation, and treatment.

On May 7, 2003, the Pope County court entered an order of conditional release, finding that Bailey was still affected by mental disease or defect, but he no longer presented a risk of harm to himself or others. At that time, the court ordered Bailey to be placed in the custody of the Arkansas Partnership Program in Little Rock.

Shortly after his transfer to the Arkansas Partnership Program, the Arkansas Department of Correction instituted a Sex Offender Screening and Risk Assessment (SOSRA) for Bailey. On June 25, 2003, the Sex Offender Assessment Committee (SOAC) sent Bailey a letter, informing him that he had been assigned a Level 3 Risk Assessment. The letter informed Bailey that he could request review of the assessment if he could provide "evidence that the assessment procedures . . . were not followed, that your

examiner(s) displayed negligence or prejudice that resulted in a false representation of the facts of your case, or that sworn official documents pertaining to your crime were either not available to or not considered by the assessment team." Failing that, the letter noted, Bailey could request reassessment of his risk level in five years.

Bailey contacted the SOAC and informed it that he would pursue an administrative appeal of his risk assessment. Bailey filed his request for review with the Department of Correction's Review Panel on July 31, 2003. In his request for review, he argued that he had never been convicted of having committed rape, nor had he had an opportunity to fully test the State's charges against him. Bailey further contended that his classification was a violation of his substantive due-process rights, asserting that he had been labeled a sex offender without having ever been convicted of any charge. The SOAC denied Bailey's request for review by letter dated June 7, 2004. In that letter, the SOAC noted that Bailey was required to register as a sex offender under Ark. Code Ann. § 12-12-905(a)(3) (Repl. 2003), which provides that the registration requirements apply to a person "who is committed following an acquittal . . . on the grounds of mental disease or defect for a sex offense." The SOAC also concluded that Bailey had been afforded due process, in that he participated in the interview process, and that the Level 3 assessment was warranted by the facts of his case.

Bailey subsequently filed a petition for review in the Pulaski County Circuit Court, pursuant to the Arkansas Administrative Procedure Act, Ark. Code Ann. § 25-15-201 et seq. (Repl. 2002). In his petition, he urged that the Sex and Child Offender Registration Act of 1997 was unconstitutional, both facially and as applied to him, and alternatively, he sought reversal of his Level 3 classification. After a hearing on July 21, 2005, the Pulaski County Circuit Court found that the Sex Offender Registration Act violated federal and state constitutional guarantees of procedural due process, as applied to Bailey. Specifically, the court found that, to the extent the Act allowed the Department of Correction to assess an individual as a sex offender, despite an adjudication of not guilty by reason of mental disease or defect, the Act did not provide Bailey with sufficient due-process protections. Given its determination that the Act was unconstitutional, the court reversed the SOAC's decision to assess Bailey as a Level 3 offender. The Department of Correction filed a timely notice of appeal, and

now brings the instant appeal, contending that the Act comports with the requirements of due process.

Review of administrative agency decisions, by both the circuit court and appellate courts, is limited in scope. *Ark. Dep't of Human Servs. v. Bixler*, 364 Ark. 292, 219 S.W.3d 125 (2005); *Ark. Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. *Bixler, supra*. Thus, the review by appellate courts is directed not to the decision of the circuit court, but rather to the decision of the administrative agency. *Id*. The circuit court or appellate court may reverse the agency decision if it concludes:

> (h) [T]he substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(h) (Repl. 2002).

Moreover, in considering any constitutional challenge to a statute, this court begins with the axiom that every act carries a strong presumption of constitutionality. *See Talbert v. State*, 367 Ark. 262, 239 S.W.3d 504 (2006). This presumption places the burden of proof on the party challenging the legislation to prove its unconstitutionality, and any doubts about the statute will be resolved in favor of the statute's constitutionality, if it is possible to do so. *See Ark. Hearing Instrument Dispenser Bd. v. Vance*, 359 Ark. 325, 197 S.W.3d 495 (2004); *Foster v. Jefferson County Bd. of Election Comm'rs*, 328 Ark. 223, 944 S.W.2d 91 (1997). Because statutes are

presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. *See Kellar v. Fayetteville Police Dep't*, 339 Ark. 274, 5 S.W.3d 402 (1999).

In its first point on appeal, the Department of Correction asserts that the application of the Sex Offender Registration Act to Bailey did not violate his rights to due process.[1] Due process is intended to protect the individual from the arbitrary exercise of the powers of government. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Due process controls the procedures by which the state or federal government may take life, liberty, or property, and it may prevent governmental action no matter what procedures are made available. *Johnson v. Encompass Ins. Co.*, 355 Ark. 1, 130 S.W.3d 553 (2003) (citing *Weimer v. Amen*, 870 F.2d 1400, 1405 (8th Cir. 1989)).

Due-process rights are either substantive or procedural. Procedural due process guarantees that a state proceeding that results in deprivation of property is fair, while substantive due process guarantees that such state action is not arbitrary and capricious. *Johnson, supra* (citing *Licari v. Ferruzzi*, 22 F.3d 344 (1st Cir. 1994)). Our court discussed due-process requirements in *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999), stating as follows:

---

[1] The Department initially contends that Bailey did not preserve his procedural due-process argument, because he failed to raise that argument in his request for review before the SOAC. It is true that a party who challenges the constitutionality of a statute during an administrative proceeding must raise that issue and obtain a ruling on it during that proceeding, and that one who fails to do so fails to preserve the issue for appeal. *See, e.g., Ark. Contractors Lic. Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 330 n.1, 64 S.W.3d 241, 247 n.1 (2001). The Department claims that Bailey only raised a substantive due-process claim in his request for review. However, in that request, Bailey asserted that he had not had "an opportunity to fully test the State's charges against him," and that he had been assigned a Level 3 classification "without ever having had an opportunity to fully contest the charges." He urged that the Sex Offender Registration Act, "[t]o the extent that [the Act] provides for this classification without due process of law, . . . is unconstitutional." Procedural due process requires notice and a reasonable opportunity to be heard. *Tsann Kuen Enterprises Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003). Thus, Bailey's claim in his request for review that he was denied his due-process rights because he had not had an opportunity to be heard on the facts of the charges against him properly raised the issue of procedural due process before the SOAC.

Due process requires at a minimum that a person be given notice and a reasonable opportunity for a hearing before he is deprived of property by state action. *Owings v. Economic & Med. Servs.*, 302 Ark. 475, 790 S.W.2d 438 (1990). In that regard, the concept of due process requires neither an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. *See South Central Dist., Pentecostal Church v. Bruce-Rogers*, 269 Ark. 130, 599 S.W.2d 702 (1980). Instead, what process must be afforded is determined by context, dependent upon the nature of the matter or interest involved. *Id.*

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer great loss." *See Goldberg v. Kelly*, 397 U.S. 254 (1970). It depends upon whether the interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Id.* Thus, determining what process is due involves the consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge, supra,* [424 U.S. at] 334-35; *McCrory v. Johnson,* 296 Ark. 231, 755 S.W.2d 566 (1988).

*Thompson,* 339 Ark. at 425-26, 6 S.W.3d at 87; *see also Tsann-Kuen Enterprises Co., supra.*

In this case, in denying Bailey's request for review, the SOAC concluded that Bailey's due-process rights had not been violated because he had been "found not guilty by reason of mental disease or defect in what [the SOAC] assume[d] to be a properly constituted court, and therefore had his due process." The circuit court, however, determined that the Sex Offender Registration Act violated constitutional guarantees of procedural due process to the extent that it permitted Bailey's classification as

a Level 3 sex offender without a hearing after his acquittal of a sex offense by reason of mental disease or defect.

Bailey suggests that this court should focus on the fact that he has been "acquitted," and he maintains that, because he has never "had his day in court," he has been denied due process. In essence, Bailey argues that the facts supporting the rape charges against him have never been proven, and he denies that he has ever confessed to the crime or conceded that the facts alleged by the State ever occurred. We disagree with his assessment of his plea.

In order to comprehend his argument, we must examine the statutes under which the case against Bailey proceeded. As mentioned above, Bailey entered a plea of not guilty by reason of mental disease or defect, pursuant to Ark. Code Ann. § 5-2-312(a)(1) (Repl. 1997). Lack of capacity is an affirmative defense. Under § 5-2-312, it is an affirmative defense to prosecution that, "*at the time the defendant engaged in the conduct charged* he or she lacked capacity as a result of mental disease or defect to: (A) [c]onform his or her conduct to the requirements of law; or (B) [a]ppreciate the criminality of his or her conduct." (Emphasis added.)

We emphasize the above language — "at the time the defendant engaged in the conduct charged" — to highlight that an acquittal entered on the basis of mental disease or defect is not the same as an acquittal occasioned by the failure of proof. Here, Bailey's plea was premised on a doctor's conclusion that Bailey lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Lack of capacity is an "excuse" defense in which the defendant does not deny that his conduct was wrong, but argues that he is excused from that wrongful conduct because he lacked the capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. *See Catlett v. State*, 321 Ark. 1, 900 S.W.2d 523 (1995) (citing Ark. Code Ann. § 5-2-312(a)). We conclude that Bailey is simply wrong when he protests that the fact of his conduct has never been established; by entering a plea of not guilty by reason of mental disease or defect, he acceded to the allegation that he engaged in the conduct charged.[2]

---

[2] This conclusion does not conflict with *Gruzen v. State*, 276 Ark. 149, 634 S.W.2d 92 (1982). Bailey argues that *Gruzen* establishes that a plea of not guilty by reason of insanity is

Our conclusion is bolstered by the case of *Jones v. United States*, 463 U.S. 354 (1983), in which the United States Supreme Court held that "[a] verdict of not guilty by reason of insanity establishes two facts: (i) *the defendant committed an act that constitutes a criminal offense*, and (ii) he committed the act because of mental illness." *Jones*, 463 U.S. at 363 (emphasis added); *see also Foucha v. Louisiana*, 504 U.S. 71 (1992). In *Jones*, the Supreme Court held that due process was not offended by a statutory scheme that permitted a criminal defendant who had been found not guilty by reason of insanity to be committed to a mental institution for an indefinite term. Noting that such a commitment clearly "constitute[d] a significant deprivation of liberty that requires due-process protection," *id.* at 361, the Court pointed out that an automatic commitment under the relevant statute would follow "only if the *acquittee himself* advances insanity as a defense and proves that his criminal act was a product of his mental illness." *Id.* at 367 (emphasis in original). Accordingly, the Court held that, when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, "the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." *Id.* at 370.

Applying this rationale to the instant case, we conclude that Bailey himself raised the issue of mental disease or defect and, by entering a plea of not guilty by reason of mental disease or defect, he asked the court to conclude that he lacked capacity to *conform his conduct* to the requirements of law. Although the foundation of Bailey's due-process argument is his contention that he never had his day in court, and never had an opportunity to challenge or contest the facts alleged by the State, we conclude that, by entering a plea of not guilty by reason of mental disease or defect, Bailey, in essence, conceded that he engaged in the conduct charged.

> With regard to the nature of the insanity defense, it has been said that the plea of not guilty by reason of insanity is misleading in that

---

not an admission of the acts that constitute a crime. Bailey's argument is misplaced for two reasons. First, the portion of the *Gruzen* opinion on which Bailey relies is dicta. Second, *Gruzen* was a criminal case, while this case is a civil case in which *Jones v. United States*, 463 U.S. 354 (1982), is controlling because the Act is not punishment. *See Jones*, 463 U.S. at 366; *Kellar v. Fayetteville Police Dep't*, 339 Ark. 274, 5 S.W.3d 40 (1999) (holding that the Act is not punitive).

> *one who successfully invokes such a plea can be said to be guilty of the criminal act* but not subject to penal sanction because of his mental condition at the time of the offense; rather than being not guilty by reason of insanity, he can be said to be guilty but not punishable.

22 C.J.S. *Criminal Law* § 100 (1989) (emphasis added). Thus, although Bailey claims he was denied the opportunity to challenge the facts alleged by the State, his plea, entered pursuant to Ark. Code Ann. § 5-2-313(a), established the fact that, "[a]*t the time of the conduct charged,* the defendant lacked capacity as a result of mental disease or defect *to conform his . . . conduct* to the requirements of law or to appreciate the criminality of his . . . conduct." Ark. Code Ann. § 5-2-313(a)(2).[3]

■■ Indeed, the trial court's order of acquittal specifically found that, "*at the time of the offense,* [Bailey] lacked the capacity as a result of mental disease or defect *to conform his conduct* to the requirements of the law." (Emphasis added.) At oral argument, Bailey denied that this statement constituted a finding of fact that he actually engaged in the conduct, but we are unable to reach any other conclusion. Accordingly, we hold that, because he availed himself of the procedure afforded under § 5-2-313, Bailey's due-process rights were not violated.

Additionally, the Court in *Jones*, in which the defendant did not have a trial, held that civil commitment of an insanity acquittee based on a "finding of not guilty by reason of insanity" is a sufficient foundation for commitment "for the purposes of treatment and the protection of society," and thus comports with due process. *Jones*, 463 U.S. at 366. Similarly, because the Act provides for community notification — which is a lesser deprivation than civil commitment and is for the protection of society and not for punishment — the Act comports with due process.

Moreover, we note that the Eighth Circuit has rejected a procedural due-process challenge to Arkansas's Sex Offender Reg-

---

[3] By way of contrast, the following subsection of this statute provides that when the defendant does not raise the issue of mental disease or defect as an affirmative defense, "then the court is required to make a factual determination that the defendant committed the offense and that he or she was suffering from a mental disease or defect at the time of the commission of the offense." Ark. Code Ann. § 5-2-313(b) (Repl. 2006). Where a defendant raises the issue of mental disease or defect by way of a plea under subsection (a), the trial court is not required to make such a determination. Presumably, the reason for this is that, when the defendant pleads insanity, he has already admitted to the conduct constituting the offense as a matter of law pursuant to § 5-2-312(a).

istration Act. In *Weems v. Little Rock Police Department*, 453 F.3d 1010 (8th Cir. 2006),[4] the Eighth Circuit was presented with a challenge to the Act in which appellants Weems and Lampkin asserted that the Act violated their procedural due-process rights because the risk assessment determination and the resulting notification to the community deprived them of a liberty interest without due process of law. The Eighth Circuit rejected their contention. Describing the assessment process, the Eighth Circuit noted that examiners performing risk assessments for sex offenders consider "actuarial analyses, information obtained from interview, psychological testing and evaluation, review of relevant records and historical data, and a polygraph or penile plethysmograph." *Weems*, 453 F.3d at 1013 (citing *The Sex Offender Guidelines & Procedures for Implementing Risk Assessment and Community Notification Regarding Sex Offenders*, at p.9). Under Ark. Code Ann. § 12-12-917(b)(1) (Repl. 2003), examiners use the information gathered from the assessment to determine the applicable level of risk. *Id.*

The Eighth Circuit noted that sex offenders may subsequently avail themselves of further statutory procedures to challenge their assessments, including the submission of a written request for administrative review. *Id.* (citing Ark. Code Ann. § 12-12-922(b)(1)(A) (Supp. 2005)). Further, until that administrative review is completed, community notification of an offender's risk status shall be made "only at the level immediately below the level upon which review has been requested." *Id.* (citing § 12-12-922(b)(5)). If the administrative review does not alter the assigned risk level, the *Weems* court commented, the sex offender then has the right to file a petition for judicial review in circuit court, pursuant to the Arkansas Administrative Procedure Act.

Applying the *Mathews v. Eldridge* balancing test, the Eighth Circuit then balanced the private interest affected by the State's actions, the risk of erroneous determinations under current procedures and the probable value of any additional safeguards, and the State's interest in risk assessment and community notification, including the fiscal and administrative burdens of additional procedures. *Id.* at 1018. Upon its consideration of these factors, the Eighth Circuit held that the existing procedures in the Act comport with the Constitution, writing as follows:

---

[4] *Weems, supra,* was decided by the Eighth Circuit on July 13, 2006, after the Pulaski County Circuit Court rendered its decision in this case.

Before a team operating under the oversight of the Sex Offender Assessment Committee may assign a risk level to an offender, the team conducts a thorough review of official records and historical data, performs psychological testing and evaluation, undertakes actuarial analyses, and conducts a personal interview with the offender. The offender has an opportunity to be heard through the interview, and may access most records and information maintained by the committee. Ark. Code Ann. § 12-12-917(d)(2)(A). The examination team typically follows an actuarial prediction model based on objective criteria, but the Guidelines do permit "some flexibility" to account for "special circumstances" of a particular case that are not adequately considered in the model. These "overrides" and "departures" permit the examiners to increase or decrease the assigned level based on special circumstances. *Guidelines*, at 14–15. Any such adjustment must be "fully documented," and it is subject to review by the Sex Offender Assessment Committee. *Id.* at 15.

The State has a strong interest in protecting children from dangerous offenders through a process that is efficient and practical. While sex offenders have an interest in avoiding inaccurate community notification or an unwarranted residency restriction, the Guidelines do not permit notification of a "high risk" assessment, which triggers the residency restriction and may bring greater opprobrium than notification in accordance with Level 1 or 2 status, until after the conclusion of an administrative review. Prior to this review, the risk of erroneous deprivation is negligible. Although examiners believe that the offender is a "high risk," the community may be notified only that the offender presents a "moderate risk," and the offender's criminal record — which almost certainly implies at least some level of risk — is already a matter of public record. The administrative review then ensures that the sex offender's assessment is considered by both the examination team and the Sex Offender Review Committee before a Level 3 assessment is implemented.

*Id.* (footnote omitted).

The Eighth Circuit further noted that is was "unlikely" that further procedural mechanisms, such as a right to counsel or to confront witnesses, would "appreciably reduce the risk of an erroneous determination, while they would entail rather significant fiscal and administrative burdens." *Id.* at 1019. Because the Act does provide for an adversarial judicial review of the SOAC's

administrative review decision, the *Weems* court held that the Act afforded "the full procedural guarantees set forth in the Arkansas Administrative Procedure Act." *Id*.

 Bailey argues that *Weems* is factually distinguishable from his case, in that both appellants in *Weems* had stood trial and been convicted of their sex offenses, while Bailey was acquitted by reason of mental disease or defect and thus had not had an opportunity to contest the facts of his charges. However, as discussed above, Bailey's decision to enter a plea pursuant to § 5-2-313(a) resulted in a finding by the circuit court that he had engaged in the charged conduct. Additionally, although the defendants in *Weems* were placed on the sex offender registry following a trial, and Bailey was acquitted by reason of mental disease or defect, the procedures outlined in the *Weems* case and provided by the Act are applicable whether one stood trial and was convicted, or whether one was acquitted by reason of mental disease or defect. Regardless of the reason one is required to register as a sex offender, the procedures afforded by the Act are the same. The Eighth Circuit has held that those procedures comport with procedural due-process requirements, and Bailey makes no convincing argument that causes this court to conclude any differently.[5]

In its next point, the Department of Correction urges that the Sex Offender Registration Act does not violate Bailey's substantive due-process rights. The circuit court did not rule on Bailey's substantive due-process arguments, instead basing its decision solely on the procedural due-process points raised in his petition for judicial review. The SOAC, however, rejected Bailey's due-process argument that application of the Act violated his rights because he had not been convicted of any charge and had not had the opportunity to fully contest the charges.

---

[5] In another Eighth Circuit case, that court rejected a procedural due-process argument on a different basis. In *Gunderson v. Hvass*, 339 F.3d 639 (8th Cir. 2003), Gunderson was charged with a sex offense, but ultimately entered a guilty plea to third-degree assault; Minnesota required registration for those convicted of a sexual assault or another offense arising out of the same set of circumstances. On appeal, Gunderson claimed his reputation had been injured by requiring him to register as a predatory offender, even though he had not been convicted of a predatory offense. The Eighth Circuit rejected his contention, noting that "[d]amage to reputation alone ... is not sufficient to invoke the procedural protections of the Due Process Clause. [Citations omitted.] The loss of reputation must be coupled with some other tangible element to rise to the level of a protectible property interest." *Gunderson*, 339 F.3d at 644.

Substantive due process requires that legislation be rationally related to achieving a legitimate governmental purpose. *Johnson, supra; Smith v. Denton,* 320 Ark. 253, 895 S.W.2d 550 (1995). Further, a statute protects a person's right to substantive due process if it advances a compelling state interest, and it is the least restrictive method available to carry out that interest. *Johnson, supra* (citing *McGuire v. State,* 288 Ark. 388, 707 S.W.2d 360 (1986)).

The Eighth Circuit has noted that any "[s]ubstantive due-process analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " *Doe v. Miller,* 405 F.3d 700, 710 (8th Cir. 2005) (quoting *Reno v. Flores,* 507 U.S. 292, 302 (1993); *Collins v. Harker Heights,* 503 U.S. 115 (1992)). In this case, Bailey asserts a right to a "liberty interest to be free from the damage caused by the stigma of being labeled a 'high risk sex offender.' " However, Bailey cites no authority that holds such a purported "liberty interest" to be a fundamental right. Indeed, the weight of authority would seem to hold to the contrary. *See In re W.M.,* 851 A.2d 431, 448 (D.C. 2004) (to trigger strict judicial scrutiny of the District of Columbia's Sex Offender Registration Act, it was "not enough . . . to show that the law restricts [the defendants'] liberty or invades their privacy. At a minimum, they must show that SORA impinges on rights and liberties that are fundamental[.]"); *Doe v. Tandeske,* 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) (concluding that persons who had been convicted of serious sex offenses did not have a fundamental right to be free from the registration and notification requirements set forth in the Alaska sex offender registration statute). When a fundamental right is not implicated, the State need only show that the statute's registration requirements are rationally related to a legitimate governmental purpose. *See Gunderson v. Hvass,* 339 F.3d 639, 643 (8th Cir. 2003).

This court has previously held that the purpose of Arkansas's Sex Offender Registration Act is nonpunitive. *See Kellar v. Fayetteville Police Dep't,* 339 Ark. 274, 287, 5 S.W.3d 402, 410 (1999).[6]

---

[6] Bailey claims that a fundamental right is, in fact, implicated, and that application of the Act to him is punitive because he "has been subjected to [the Act's] debilitating effects despite never being convicted of a crime." However, this court has explicitly held that the Act

Given that the Act is not punitive, and that no fundamental right is implicated, we need not apply a strict-scrutiny analysis, but may instead determine whether a rational basis exists for the Act. Under the rational-basis test, the party challenging the constitutionality of the statute must prove that the statute is not rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *See Whorton v. Dixon*, 363 Ark. 330, 214 S.W.3d 225 (2005); *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607 (2005).

In enacting the Sex Offender Registration Act, the General Assembly made the following legislative findings:

> The General Assembly finds that sex offenders pose a high risk of reoffending after release from custody, that protecting the public from sex offenders is a primary governmental interest, that the privacy interest of persons adjudicated guilty of sex offenses is less important than the government's interest in public safety, and that the release of certain information about sex offenders to criminal justice agencies and the general public will assist in protecting the public safety.

Ark. Code Ann. § 12-12-902 (Repl. 2003); *see also Kellar*, 339 Ark. at 282, 5 S.W.3d at 407. Moreover, the United States Supreme Court has determined that sex offenders "are a serious threat in this nation," and has stated that, "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sex assault." *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 4 (2003).

██ Bailey does not dispute that the State has a legitimate and "very high" interest in protecting society from repeat sex offenders. To that concession, the Department of Correction adds that there can be no serious dispute that the State has a legitimate interest in protecting the community from persons who have committed acts that constitute a sex offense, regardless of whether those persons had the ability to appreciate the criminality of those acts or conform their conduct to the requirements of the law. After all, the Department notes, "victims of sexual assault are injured and

---

is nonpunitive in nature. *See Kellar*, 339 Ark. at 287, 5 S.W.3d at 410. Accordingly, there is no merit to Bailey's "fundamental right" argument.

terrorized regardless of whether their assailants are insane." The Department of Correction further urges that requiring persons acquitted of a sex offense by reason of mental disease or defect to submit to a risk assessment is rationally related to the State's interest in protecting society from sex offenders, in that the insanity acquittal "established that [the defendant] committed the acts that constituted the offense." *See Jones v. United States, supra*; *Foucha v. Louisiana, supra*. Clearly, the assessment requirement for one who is acquitted of a sex offense by reason of mental disease or defect is rationally related to the State's high and legitimate interest in protecting society from repeat sex offenders.[7]

The circuit court is reversed; the decision of the Sex Offender Assessment Committee is affirmed.

---

[7] In its final contention on appeal, the Department of Correction urges this court to hold that substantial evidence supports Bailey's classification as a Level 3 sex offender. The Department asserts that, in the event we agree that the Act is constitutional and reverse the decision of the circuit court, there is no need to remand the matter to the Sex Offender Assessment Committee for further proceedings, because substantial evidence supports the SOAC's decision to classify Bailey as a Level 3 offender. However, we see no need to discuss whether substantial evidence supports the classification. The circuit court overturned Bailey's classification not because of a lack of substantial evidence, but because the court determined that the Act violated due process. Indeed, the circuit court commented at the hearing that the evidence supported the Level 3 classification. Accordingly, we find that there is no need to analyze or discuss the issue.