John NASH *v.* ARKANSAS ELEVATOR SAFETY BOARD
and Arkansas Department of Labor

06-1257                                                        259 S.W.3d 421

Supreme Court of Arkansas
Opinion delivered June 21, 2007
[Rehearing denied September 6, 2007.]

*Nash Law Firm*, by: *Jim Roger Nash*, for appellant.

*Denise P. Oxley*, Department of Labor, for appellee.

Jim Gunter, Justice. This appeal arises from an order of the Pulaski County Circuit Court affirming two administrative decisions of Appellee Arkansas Elevator Safety Board (Board) in response to requests for variances made by Appellant John Nash. We affirm the Board's rulings.

Appellant John Nash is the part owner of a Little Rock warehouse where a freight elevator, built in 1926, was used for commercial purposes and was in continuous operation. The AS 746 elevator serviced the warehouse, and according to the records of Appellee Arkansas Department of Labor ("DOL"), there was not an injury or accident involving the elevator. On October 21, 2002, Larry Smothers, chief elevator inspector for the DOL, "red tagged" the elevator because it had not been inspected and because its operating permit had expired. As a result, the DOL ordered Nash to cease its operation for failure to have its required safety inspections, safety tests, and operating permit. The DOL's records reflected that the last operating permit for the elevator expired on November 30, 2000, and there had been no safety inspections since November 1990. Further, there had been no full-load safety test since 1987.

On June 3, 2004, Nash presented his petition to the Board, requesting that the elevator be reclassified as a material lift. In his petition, Nash argued for a variance to allow the elevator to operate because of undue hardship and noncompliance because of its existing conditions. The petition suggested that, after a proposed expenditure of $4,000 to $5,000 for maintenance, the elevator would be put in a reasonably safe condition. By a letter dated August 26, 2004, the DOL notified Nash that the variance request would be heard by the Board at its September 23, 2004 meeting.

At the September 23, 2004 hearing, Nash testified that the elevator was essential to the operation of the warehouse and that the value of the warehouse was reduced significantly without its

use. He stated that he believed Mike Lanford, a licensed elevator inspector, could update the elevator and return the elevator to safety specifications. Nash further stated that repairs would cost $4,000 to $5,000, as opposed to $90,000 for a new freight elevator. The Board orally denied the request for the variance and voted to approve the operation of the elevator if it substantially complied with the provisions of the American Society of Mechanical Engineers Safety Code for Existing Elevators, ASME A-17.3-1992, by making eleven safety corrections listed in Smothers's report. The Board agreed to reconsider the variance request at the next Board meeting.

The Board's next meeting took place on November 3, 2004, where Nash requested that the Board reconsider its September 23, 2004 decision. There was some testimony concerning the conversion of the elevator to a material lift and whether the Elevator Safety Code would apply. At the end of the hearing, the Board denied the requested variance, stating that the elevator must meet the standards of ASME A17.3-1992; that it cannot meet those standards without the eleven corrections listed in Smothers's report of September 21, 2004; and that reasonable safety cannot be assured without meeting the standards of the code.

At the meeting of the Board on February 18, 2005, the Board approved the order prepared by the DOL with respect to Nash's written request for a variance to operate the elevator. Also, on February 18, 2005, the Board refused to approve the order granting a variance to operate the elevator as a material lift, continuing the matter until Smothers could provide the Board with pictures and a recommendation regarding the proposed classification of the Board. The Board's November 3, 2004 order was entered on February 22, 2005.

A third meeting was held on June 9, 2005. The Board again rejected Nash's arguments and entered an order on June 9, 2005, ruling that "reasonable safety can be assured by allowing this elevator to operate as a material lift upon compliance of certain conditions," which included the eleven items identified in Smothers's report, such as (1) installing hoistway gates on all floors with electrical and mechanical locks seven feet high; (2) installing a car gate with electrical and mechanical locks; (3) installing car and machine-room lighting; (4) guarding machine from the back of the car; (5) removing water from pit and repairing elevator equipment; (6) installing all junction-box covers — hoistway, machine room, and machine; (7) installing fire extinguisher in machine room; (8)

locking machine-room door; (9) clearing for governor in overhead to work; (10) enclosing hoistway sidewall and top, and closing all holes in walls; and (11) passing complete safety test, five years full load and all safety devices. The Board also conditioned the variance upon compliance with prohibiting the elevator's use by passengers, removing all controls from the car to outside the car, and posting a conspicuous sign stating, "No Passengers Allowed by Law — Material Lift Only." The Board granted Nash's request for a variance. The Board's order was entered on June 9, 2005.

On July 7, 2005, Nash filed a petition for judicial review of the Board's administrative adjudication, pursuant to the provisions of Ark. Code Ann. § 20-24-119 (Repl. 2005) and of the Administrative Procedure Act, specifically codified at Ark. Code Ann. § 25-15-212 (Repl. 2002), with the Pulaski County Circuit Court. On July 12, 2006, the circuit court entered an order, ruling that (1) there was substantial evidence in the record to support the Board's finding that there was no undue hardship; (2) there was substantial evidence to support the Board's finding that granting Nash's variance requests without conditions would not be reasonably safe; (3) Nash's constitutional challenges were not raised at the administrative level and were barred; (4) the Board did not err in considering Smothers's inspection report even though Nash had not received a copy prior to the hearing; and (5) the evidence does not support an allegation of discrimination with respect to conditions imposed on him. Nash timely filed a notice of appeal on August 9, 2006. On May 17, 2007, we issued a per curiam opinion ordering Nash to rebrief for his failure to comply with Ark. Sup. Ct. R. 4-1 (2006). *Nash v. Ark. Elevator Safety Bd.*, 370 Ark. 86, 257 S.W.3d 80 (2007). Nash has submitted a new brief, and we now consider the merits of his appeal.

For his first point on appeal, Nash argues that the Board erred in finding that there was no undue hardship in its February 22, 2005 order. Specifically, Nash contends that there was no substantial evidence to support the Board's finding and that the Board "operates now as an insuror against any 'possibility' of an injury." Nash also contends that the elevator's being "reasonably safe" is the current standard, and in his view, the Board's position of "protection against 'any possibility' of an injury is an extreme requirement."

In response, the Board argues that it did not err in finding no undue hardship with respect to Nash's initial variance request. The Board asserts that its finding was supported by substantial evidence.

The Board agrees that "the only evidence presented by the Appellant to support a claim of undue hardship were the hearsay statements of counsel for the Appellant." The Board concedes that it did not object to the introduction or consideration of this hearsay evidence.

Review of administrative agency decisions, by both the circuit court and appellate courts, is limited in scope. *Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007). The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. *Id.* Thus, the review by appellate courts is directed not to the decision of the circuit court, but rather to the decision of the administrative agency. *Id.* The circuit court or appellate court may reverse the agency decision if it concludes:

> (h) [T]he substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record;  or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(h) (Repl. 2002).

An administrative agency's interpretation of its own regulation will not be overturned unless it is clearly wrong. *Dukes v. Norris*, 369 Ark. 511, 256 S.W.3d 483 (2007). We have recognized that administrative agencies, due to their specialization, experience, and greater flexibility of procedure, are better equipped than courts to analyze legal issues dealing with their agencies. *Id.*

The authority of the Arkansas General Assembly to regulate elevators is found at Ark. Code Ann. §§ 20-24-101 to -120 (Repl. 2005). Specifically, the legislature created the Elevator Safety

Board in section 2 of Act 189 of 1963, codified at Ark. Code Ann. § 20-24-106 (Repl. 2005), and the Board is responsible for the "[r]ules and regulations prescribing minimum safety requirements for all existing elevators." Ark. Code Ann. § 20-24-107(c)(4).

Under the Board's regulations, there is a standard for elevators installed prior to August 27, 1963. Those regulations provide in pertinent part:

> (1) All elevators, escalators, and dumbwaiters installed and in existence prior to August 27, 1963, shall conform to the requirements of The American Society of Mechanical Engineers Safety Code for Existing Elevators, ASME A17.3-1992, except as provided in Rule (f)(1)(a)(ii) and (f)(1)(a)(iii), below. These standards are hereby adopted by reference and incorporated herein. Notwithstanding any provision of ASME A17.3-1992 to the contrary, the following provisions shall apply to all elevators, escalators, and dumbwaiters installed prior to August 27, 1963, as applicable[.]

> . . . .

> (ii) The owner or operator of any elevator subject to Rule (f)(1)(A)(i) above shall have two (2) years from the effective date of these regulations to comply.

010-05-001 Ark. Code R. § f(1)(A) (Weil 1994).

Arkansas Code Annotated § 20-24-106(d) confers upon the Board the power to grant exceptions and variations in certain circumstances. That statutory provision provides:

> (d) The board shall also have the power *in any particular case to grant exceptions and variations which shall only be granted when it is clearly evident that they are necessary in order to prevent undue hardship or when the existing conditions prevent compliance with the literal requirements of the rules and regulations.* In no case shall any exception or variation be granted unless, in the opinion of the board, reasonable safety will be secured thereby.

Ark. Code Ann. § 20-24-106(d) (emphasis added).

With this precedent in mind, we turn to the present case to determine whether Nash's petition to the Board for a variance establishes an undue hardship that is "clearly evident" under Ark.

Code Ann. § 20-24-106(d). Here, the Board, in its February 22, 2005 order, made the following conclusion of law:

> 2. The evidence of an undue hardship before the board is that the cost of compliance to this commercial enterprise would be close to $60,000, which Petitioner claims is approximately one-third the value of the warehouse.
>
> . . . .
>
> 4. The Board concludes that there is no undue hardship.

Because our standard of review requires us to review the agency's decision, we agree with the Board's conclusions on the undue-hardship issue. Nash failed to present any evidence regarding the cost of bringing the elevator up to code, the cost of a new elevator, or the value of the warehouse property. Nash's counsel, in his arguments to the Board, revealed that "it [would] cost ninety thousand to replace this elevator and about sixty to seventy thousand I think to make the changes that he [Smothers] recommends, and this warehouse is simply not worth that." However, Smothers testified in the following colloquy:

> STEVE KINZLER: [Board member]: So Larry, you are also saying to make these eleven improvements, it may not be sixty thousand that he has already incurred. It may be forty or fifty thousand.
>
> ALLEN GAULDING [Board member]: He is going to have to spend some money.
>
> STEVE KINZLER: Oh yeah, it's definitely going to be an expense.
>
> LARRY SMOTHERS: It's still going to be expensive, but it won't be no fifty or sixty thousand dollars.

At the hearing, Nash testified about addressing Smothers's list of problems with the elevator, stating, "I'm not sure what the difference of the cost is, I understood the gates and locks, the first two or three items on that list of eleven, and Mr. Smothers, they were the one[s] that would run it up to about sixty thousand dollars, ah, just to make those changes [sic]."

This conflicting evidence fails to prove that Nash would suffer an undue hardship for the following reasons. First, Nash's counsel's statements constitute hearsay, and while hearsay is

admissible in an agency decision, it does not constitute substantial evidence. *Garner, supra.* Second, Smothers, DOL's chief elevator inspector, testified that he believed that bringing the elevator up to code would not cost the $60,000 that Nash anticipated. Third, Nash gave his estimate, but he did not provide any estimates of a new elevator, costs of repair, or value of the property. Because Nash failed to prove that he suffered a clearly evident undue hardship, pursuant to Ark. Code Ann. § 20-24-106(d), we affirm the Board's findings on this issue.

Further, the Board argues that its decision should be affirmed based upon the statutory requirement of Ark. Code Ann. § 20-24-106(d). Specifically, the Board contends that its decision should be upheld on the basis of reasonable safety, as there is substantial evidence to support its findings.

Variances shall not be granted unless, in the opinion of the Board, reasonable safety will be secured. Ark. Code Ann. § 20-24-106(d). Additionally, Ark. Code Ann. § 20-24-112(a)(3) requires the owner or lessee of every freight elevator to be inspected once a year.

With these statutory provisions in mind, we turn to the present case. Here, in its June 9, 2005 order, the Board made the following findings:

> 3. The standards of ASME A17.3-1992 are the least stringent safety standards applicable to any elevator in Arkansas. Elevator AS 746 does not currently meet those standards. The elevator cannot substantially meet those standards without correcting the eleven safety violations listed in Mr. Smothers's report of September 21, 2004.
>
> . . . .
>
> 5. Elevator ASW 746 does not currently meet the standards of ASME A17.3-1992. The elevator cannot substantially meet those standards without correcting the eleven (11) safety violations listed in Mr. Smothers's report of September 21, 2004.
>
> 6. The board concludes that reasonable safety cannot be assured without meeting the standards of ASME A17.3-1992.

We agree with the Board's findings. According to Smothers, the 1926 elevator had not been inspected since 1990, which was twelve years before Smothers conducted his inspection

in 2002, at which time the elevator was "red tagged," or taken out of service. Smothers testified that he had worked in the elevator field for twenty-seven years, and his opinion as to the safety of the unit was that "[he] would not allow it to operate at all." Further, he added that in order to operate as a materials lift, it would "have to have a fully enclosed hoistway door and car gate with mechanical and electrical locks." The pictures and video submitted as exhibits supported Smothers's testimony, and as the circuit court's order reflected, there was two feet of water in the pit of the elevator. Therefore, based upon this evidence, the Board properly found that the elevator was not reasonably safe.

We note that it is well settled that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues; and this may be brought up in a contest between opposing forces in a highly charged atmosphere. *Baxter v. Ark. State Bd. of Dental Exam'rs*, 269 Ark. 67, 598 S.W.2d 412 (1980). This recognition has been asserted, as perhaps the principal basis for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Id.* Based upon this precedent, we defer to the Board's expertise on the matter, and for the foregoing reasons, we affirm the Board's rulings.

For his second point on appeal, Nash argues that the Board and circuit court erred in refusing to allow the requested variances, or exceptions to the code, regarding an elevator that was in existence prior to the code. Specifically, Nash contends that the legislature adopted a "grandfather principle" for existing elevators, found at Ark. Code Ann. § 20-24-106(d). Nash also asserts that there were "procedural irregularities" that supported "a showing of discriminatory treatment." In response, the Board argues that the term, "grandfather principle," is confusing and that Ark. Code Ann. § 20-24-106(d) applies "as equally to new construction as to existing elevators." Further, citing Ark. Code Ann. § 20-24-106(b), the Board asserts that it has specific authority to adopt standards for existing elevators.

The Board has the specific authority to adopt standards for existing elevators. Ark. Code Ann. § 20-24-106(b). The statute upon which Nash relies is Ark. Code Ann. § 20-24-106(d), which

authorizes the Board to approve a variance when (1) it is "clearly evident" that it is necessary in order to prevent undue hardship or (2) when the existing conditions prevent compliance with the literal requirements of the rules and regulations. The statute also provides that variances will not be issued unless "reasonable safety will be secured." *Id.*

First, we address Nash's argument regarding the eleven safety violations. Here, the Chief Elevator Inspector testified that the eleven corrections would bring the elevator in compliance with minimum safety standards established by ASME A17.3-1992, for existing elevators installed prior to August 27, 1963. At the Board's hearing held on November 3, 2004, the following colloquy occurred:

> DENISE OXLEY: Now, um your recommendations, you made eleven recommendations, which the board should have about safety. . . . Ok, would that get the elevator, those eleven recommendations, substantially in compliance with A17.3?

> LARRY SMOTHERS: It most likely would. . . . It would get it close.

According to the DOL's Elevator Safety Code No. 14, which was promulgated by the Board and the DOL, any existing elevator, which was installed prior to August 27, 1963, "shall" conform to ASME A17.3-1992. 010-05-001 Ark. Code R. § f(1)(A). Further, any elevator that was installed prior to August 27, 1963, that "does not have a current operating permit and has been out of operation for over twelve (12) months shall conform" to Rule (d)(1), which provides the minimum standards for newly constructed elevators. *Id.* We do not find any authority that provides a lesser standard for elevators installed prior to August 27, 1963. According to section (f) of the Elevator Safety Code, those existing elevators, including the elevator in the present case, must be brought up to code. This procedure guarantees "reasonable safety" under Ark. Code Ann. § 20-24-106(d). Thus, we conclude that the Board did not err in conditioning its approval for Nash's variance upon correcting the eleven code violations.

Second, we consider Nash's arguments regarding the "procedural irregularities" in the case that are allegedly "proof of discrimination." Nash relies upon *Garner v. Foundation Life Insurance Co.*, 17 Ark. App. 13, 702 S.W.2d 417 (1986), for the proposition that "procedural irregularities could support a show-

ing of discriminatory treatment." Specifically, Nash points to (1) the report made by Smothers regarding the eleven violations; (2) his absence from the Board meeting on February 18, 2005; (3) a blank tape of the hearing on September 23, 2004; and (4) "the complete turn around in Mr. Smothers's testimony on the application of the code." In response, the Board argues that Nash did not request the report in advance; that Nash had knowledge of the February 18, 2005 meeting; and that Nash never requested the Board to settle the record.

■ We will examine each of Nash's allegations of error. First, we disagree with Nash's argument that *Garner, supra,* is on point. In *Garner,* appellant contended that the court erred in taking additional evidence beyond the agency's record. However, the court of appeals held that the evidence, which was not presented to the Commission but could have been, was improperly admitted by the circuit court. Here, Smothers's inspection report was actually made on September 21, 2004, two days prior to the Board's meeting. Nash and his counsel attended the meeting and were given a copy of the report, and no prior request was made under Ark. Code Ann. § 25-15-208(a)(3). Nash requested an additional hearing, which was granted, and the next hearing was held on November 3, 2004. Thus, the Board did not err in considering Smothers's inspection report.

Second, Nash claims that there is a "procedural irregularity" in the February 18, 2005 meeting because the Board conducted a hearing. We note that Nash's argument was not raised below. We have said that the issue must be preserved at the agency level. *See Ark. Contractors, supra.* However, even if this argument were preserved, Nash admitted to Denise Oxley in the June 9, 2005 hearing that he had notice of the meeting, but he believed "just the orders would be presented." The Administrative Procedure Act requires only that Nash had notice and the opportunity to participate. Ark. Code Ann. § 25-15-209(a).

■ Third, Nash claims that there was an additional procedural irregularity because the tapes of the September 23, 2004 hearing were blank, and consequently, a transcript of that hearing was unavailable. Here, the tape of the September 24, 2004 hearing is blank, and a portion of the transcript of the hearing on November 3, 2004, is incomplete. Nash never requested any ruling from the Board on the transcript issue, nor did he request the Board to settle the record. No such request was made at the June 9, 2005

hearing. On June 8, 2005, the circuit court entered an order, finding the record of the administrative proceedings incomplete. A supplement to the record was filed on June 24, 2005, and February 8, 2006. The circuit court's action cured any deficiencies. Based upon the foregoing conclusions, we affirm the Board's findings on these procedural-irregularity issues.

For his third point on appeal, as well as second point on appeal, Nash argues that the Board erred in conditioning the approval of his second variance to operate Nash's elevator as a material lift. Specifically, Nash contends that such refusal of the Board is "contrary to substantial evidence" and constitutes "unlawful discrimination." Nash asserts that Smothers's testimony between the first hearing and the last hearing on the material-lift issue "has been substantially different for this petitioner as opposed to others." The Board responds, arguing that it did not err in conditioning a variance approval to operate Nash's elevator as a material lift upon correcting eleven code violations. The Board contends that its decision is supported by substantial evidence.

To the extent that Nash's discrimination claim raises a constitutional issue, we cannot reach the merits of his point on appeal. There is no ruling or order for this court to review, and we will not address these points. *See Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001) (holding that an appellant must obtain a ruling from the Board in order to preserve an argument, even a constitutional one, for an appeal from an administrative proceeding). We have held many times that it is the appellant's obligation to raise such matters first to the administrative agency and obtain a ruling. *Id.*; *see also Franklin v. Ark. Dep't of Human Servs.*, 319 Ark. 468, 892 S.W.2d 262 (1995) (declining to review appellant's arguments that she was denied due process and her right to a hearing under Ark. Code Ann. § 25-15-208 where such arguments were not made to the administrative tribunal); *Wright v. Ark. State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992) (declining to reach "several arguments" that were not raised before the Board); *Alcoholic Bev. Control Div. v. Barnett*, 285 Ark. 189, 685 S.W.2d 511 (1985) (declining to reach a challenge to the timing of two local option elections because the argument was not raised before the Board). The rationale behind this rule is that, if the appellate court were to set aside an administrative determination on a ground not presented to the agency, it would usurp the agency's function and

deprive the agency of the opportunity to consider the matter, make its ruling, and state the reasons for its action. *See Wright, supra.*

We note, as the Board suggests, that it has granted a variance of reclassification of an elevator to a material lift in four prior cases. One such case before the Board was Peterson Farms, Inc., #3519, in which numerous modifications were made "to insure that no passengers ride this elevator." Here, we agree that the Board did not err in conditioning a variance approval to operate Nash's elevator as a material lift upon correcting the eleven code violations recommended in Smothers's report. Thus, for the foregoing reasons, we affirm the Board's findings.

Affirmed.