SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-13-1133

| | |
|---|---|
| | Opinion Delivered October 26, 2016 |
| JANE WATSON SEXTON, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF HAROLD W. PLANCHON<br>APPELLANT<br><br>V.<br><br>LOCAL POLICE AND FIRE RETIREMENT SYSTEM<br>APPELLEE | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CV13-117-6]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>REVERSED AND REMANDED FOR FURTHER PROCEEDINGS |

**BRANDON J. HARRISON, Judge**

Jane Sexton, as personal representative of the estate of Harold Planchon, appeals the denial of duty-related disability benefits to her late husband. The Arkansas Local Police and Fire Retirement System (LOPFI) found that Planchon had failed to prove a causal relationship between his disability (colon cancer) and his employment as a firefighter and instead awarded him nonduty disability benefits. The LOPFI Board of Trustees (the Board) confirmed this decision. Now, Sexton argues that the Board used an incorrect standard to decide whether Planchon's work environment was linked to his disease. We reverse and remand for further proceedings.

Planchon became an employee of the Springdale Fire Department in the spring of 1987. During his employment, Planchon not only fought fires but also investigated their origins and causes and worked on the Hazmat team. Planchon was diagnosed with colon

cancer in March 2009 but worked until 2011. In April 2011, the Occupational Health and Safety Division of the Arkansas Department of Labor investigated an allegation that the Springdale Fire Department lacked ventilation systems to prevent exposure to carbon monoxide when the engines were running in the bays. The investigation revealed a number of hazards, including the lack of proper ventilation. In August 2011, the Springdale Fire Department installed ventilation systems in all of its fire stations.

Planchon applied for duty-related disability retirement in June 2011, contending that his cancer was caused by occupational exposure as a firefighter. In deciding his claim, LOPFI considered a number of documents and reports, including physician's statements of disability from Dr. C.R. Magness, Dr. Terryl Ortego, and Dr. Dan Bradford. In response to the question, "In YOUR opinion is the described disability the result of the LOPFI Member's duties as a police officer or firefighter?" all three doctors circled "YES." In March 2012, Dr. Samuel Pelk, an occupational-medicine resident with the International Association of Firefighters, opined that "[t]he occupational exposures of fire fighters put them at increased risk for several cancers, including colo-rectal cancer. This, along with Mr. Planchon's lack of typical risk factors for cancer, suggests that his occupational exposure was a risk factor for his metastatic adenocarcinoma." When asked to provide additional thoughts on Planchon in April 2012, Dr. Bradford noted a

> significant body of research on firefighter exposure to carcinogens, not only associated with the actual fire suppression and overhaul activities, but also associated [with] the chronic exposure to diesel fumes within the firehouse itself. . . . [The] data shows that firefighters have a 21–36% increased incidence of Colon Cancer compared to the general healthy working population, with the only obvious difference being their occupational exposure history. . . . While no one can absolutely state that Mr. Planchon's

workplace exposures to carcinogens directly caused his Colon Cancer, the compelling data on this assocation can not and should not be ignored.

Dr. Ortego further stated in a separate letter dated 10 July 2012 that it was his opinion that "exposure to carcinogens and diesel fumes is the direct cause of [Planchon's] colonic cancer." A third physician, Dr. Magness, also opined in July 2012 that "Mr. Planchon's work conditions potentially led to his disease process." Finally, Dr. Kimberly Agee, who examined Planchon in July 2012, stated that "Mr. Planchon's early-onset, aggressive colon carcinoma is a result of his service as a firefighter."

LOPFI also considered a report from Dr. Balan Nair, an oncologist retained by LOPFI, who opined,

> Mr. Harold Planchon's young age at onset, his lack of other risk factors, his prolonged exposure to carcinogens and some studies which have shown an association between a long work history as a firefighter and colon cancer, it is my opinion that these circumstances make it plausible that Mr. Planchon's colon cancer was caused by his occupational exposure to carcinogens. Although this is plausible, this does not establish a definite causation.

LOPFI agreed that Planchon was totally and permanently disabled from firefighting activity but, citing Dr. Nair's report, concluded that he "was not able to establish firefighting employment as the definite cause of the disability i.e. the colon cancer." LOPFI reasoned that

> [w]hile some studies have shown an occupational relationship between colon cancer and firefighting, and the LOPFI medical advisor opined that it is plausible that these work exposures caused the cancer, the medical advisor also advised that this plausability does not establish employment as the definite origin of the cancer. . . . Because the medical advisor could not definitively opine the colon cancer was the result of LOPFI-covered employment, the system will award you a non-duty disability benefit.

LOPFI also noted that in Planchon's case, there was no monetary difference in the monthly benefit payment amount for a nonduty disability benefit as compared to a duty disability benefit payment.

Planchon requested an administrative appeal hearing before the Board, which was held in December 2012. After taking testimony and reviewing all the documents submitted by Planchon in support of his claim, including the doctors' reports, the Board announced at the conclusion of the hearing:

> We feel like that [sic] you have not been able to confirm the cause of your cancer to a sufficient degree to satisfy the requirement of establishing a duty relationship. The doctors' opinion[s] that it was duty related do nothing more than draw a conclusion based upon statistical—based upon statistical information that there was an increased risk. Nothing concrete that can firmly establish that causal relationship was provided. Specifically, your treating oncologist said in an April 16, 2012 letter, "While no one can absolutely state that Mr. Planchon's workplace exposes [sic] to a carcinogen directly caused his colon cancers [sic], the compelling data on this association cannot and should not be ignored." The board upholds the decision to award non-duty disability retirement benefit and denies the claim for a duty disability benefit.

Planchon appealed to the Washington County Circuit Court, which affirmed the Board's decision in August 2013.

Planchon filed a notice of appeal with this court; however, Planchon passed away on 11 April 2014, before the case was submitted. In June 2014, Planchon's attorney filed a motion for revivor and substitution of parties, requesting that Jane Sexton, Planchon's widow and personal representative of his estate, be substituted for Planchon as the proper appellant on appeal. This motion was certified to the Arkansas Supreme Court, which took the motion as a case in August 2014. In April 2015, the supreme court issued an opinion holding that there is no rule or statute in place that would allow the appellate

4

court to revive and substitute the appellant. *Planchon v. Local Police & Ret. Sys.*, 2015 Ark. 131, 458 S.W.3d 728. Instead, the supreme court remanded the case to the circuit court, and in December 2015, the circuit court granted the revivor and substitution of parties.

Our review of an appeal under the Administrative Procedure Act is directed, not toward the circuit court, but toward the decision of the agency. *See Ford Motor Co. v. Ark. Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004). Our review of administrative decisions is limited in scope; when reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *See id.*

Substantial evidence is defined as "valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture." *Ark. State Police Comm'n v. Smith*, 338 Ark. 354, 362, 994 S.W.2d 456, 461 (1999). The challenging party must prove an absence of substantial evidence, which means he must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.* In other words, the question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *Id.*

Arkansas Code Annotated section 24-10-607(c)(1)(A) (Repl. 2014) provides the legal standard that Planchon (now Sexton) had to meet to receive duty-disability benefits:

> Any active member who while an active member becomes totally and permanently physically or mentally incapacitated for any suitable duty as an employee as the result of a personal injury or disease *that the board finds to have arisen out of and in the course of his or her actual performance of duty as an employee* may be retired by the board upon proper application filed with the board by or on behalf of the member or former member.

(Emphasis added.) Sexton asserts that it was undisputed that Planchon was exposed to carcinogens on a daily basis during his twenty-four years of employment with the Springdale Fire Department and that firefighters have a higher risk of developing cancer because of that exposure. She also argues that pursuant to § 24-10-607(c), Planchon was only required to prove that his disability arose out of and in the course of his employment; in other words, he was only required to show a "causal connection" between his disability and his employment. *See, e.g.*, *Pilgrims Pride Corp. v. Caldarera*, 54 Ark. App. 92, 94, 923 S.W.2d 290, 291 (1996) (explaining that "arising out of the employment" refers to the origin or cause of the accident while the phrase "in the course of the employment" refers to the time, place, and circumstances under which the injury occurred).

Citing the opinions of Drs. Ortega and Agee, Sexton argues that the medical opinions of the doctors who treated Planchon established that his cancer was proximately caused by his employment; the Board, however, "incorrectly ignored" these opinions and relied solely on the opinions of Dr. Bradford and Dr. Nair in denying his duty-related disability claim. Sexton also contends that the Board erroneously required a physician "to couch opinion evidence in terms of '100 percent' or 'absolute certainty.'" But, in the context of workers' compensation law, our supreme court has stated:

> This court has never required that a doctor be absolute in an opinion or that the magic words "within a reasonable degree of medical certainty" even be used by the doctor. Rather, this court has simply held that the medical opinion be more than speculation. For example, in *Howell v. Scroll Technologies*, 343 Ark. 297, 35 S.W.3d 800 (2001), the opining doctor stated that his patient's exposure at work to a coolant mist was at least fifty-one percent the cause of her respiratory problems. We held that that opinion fell within the standard of a reasonable degree of medical certainty. *Accordingly, if the doctor renders an opinion about causation with language that goes beyond*

> *possibilities and establishes that work was the reasonable cause of the injury, this should pass muster.*

*Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 303, 40 S.W.3d 760, 765 (2001) (emphasis added). *See also Rose Care, Inc. v. Ross*, 91 Ark. App. 187, 202, 209 S.W.3d 393, 402 (2005) ("Even in medical-malpractice cases proximate cause may be shown from circumstantial evidence, and such evidence is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other that the conclusion may be fairly inferred.").

LOPFI concedes that Planchon was exposed to carcinogens as a firefighter but argues that his medical history also revealed several other risk factors. LOPFI also agrees that "there are studies in the record theorizing that exposure to carcinogens by a firefighter creates an 'increased risk' of cancer," but also says that causation is the primary issue in this case and that Planchon failed to connect the dots. LOPFI argues that Planchon wanted the Board to "make a quantum leap" in deciding that an "increased risk" was sufficient to prove causation.

LOPFI strongly disagrees that the Board required absolute certainty to establish causation. The Board explained that "the doctors' opinions that it was duty related do nothing more than draw a conclusion based upon statistical information that there was an increased risk." Finding "nothing concrete that can firmly establish that causal relationship," the Board upheld the agency's decision.

We agree that the Board required more than the statute requires in terms of proof of causation. According to the statute, Planchon had to show that his disability, meaning his cancer, had "arisen out of, and in the course of," his employment. Ark. Code Ann. §

24-10-607(c)(1)(A). And while "arisen out of" has not been defined in the context of this particular statute, it generally means that one must show a "causal connection," as explained by our workers' compensation law:

> When the primary injury is shown to have arisen out of and in the course of the employment, the employer is responsible for every natural consequence that flows from that injury. The basic test is whether there is a causal connection between the two episodes. The determination of whether the causal connection exists is a question of fact for the Commission to determine. It is not, however, essential that the causal relationship between the accident and disability be established by medical evidence. A finding of causation in a workers' compensation case does not need to be expressed in terms of a reasonable medical certainty when there is supplemental evidence supporting the causal connection.

*Koster v. Custom Pak & Trissel*, 2009 Ark. App. 780, at 3 (internal citations omitted).

In its written order, the Board cites Dr. Nair's opinion that a "*definite* causation" had not been established (emphasis added). And in its oral ruling, which was incorporated into the written order, the Board found that Planchon had not "confirmed the cause of [his] cancer to a sufficient degree" and that "[n]othing concrete" had "firmly establish[ed]" a causal relationship. Finally, the Board noted Dr. Bradford's opinion that "no one can *absolutely* state that Mr. Planchon's workplace exposures to a carcinogen directly caused his colon cancer." (Emphasis added.) Given this record, we hold that the Board required a level of certainty that goes beyond what is required by the statute. We therefore reverse the Board's decision and remand for further proceedings consistent with this opinion. *See Williams v. Johnson Custom Homes*, 374 Ark. 457, 288 S.W.3d 607 (2008) (finding that the Commission based its finding on a misconception of the applicable law and remanding for further proceedings).

Reversed and remanded for further proceedings.

ABRAMSON and KINARD, JJ., agree.

*Robert S. Tschiemer*, for appellant.

*Eichenbaum Liles P.A.*, by: *Richard L. Ramsay*, for appellee.