Cite as 2025 Ark. App. 114

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-22-573

| | |
|---|---|
| STEVE A. BALDWIN, AS REPRESENTATIVE OF THE JOAN A. BALDWIN FAMILY TRUST AGREEMENT; THE STEVE A. BALDWIN FAMILY TRUST; THE ALTON BALDWIN FAMILY TRUST AGREEMENT; AND BALDWIN ENTERPRISES | Opinion Delivered February 26, 2025 |
| | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-20-545] |
| APPELLANTS | |
| | HONORABLE TED CAPEHEART, JUDGE |
| V. | |
| | AFFIRMED |
| ARKANSAS DEPARTMENT OF TRANSPORTATION | |
| APPELLEE | |

**ROBERT J. GLADWIN, Judge**

In this administrative appeal, Dr. Steve A. Baldwin, as representative of the Joan A. Baldwin Family Trust Agreement; the Steve A. Baldwin Family Trust; the Alton Baldwin Family Trust Agreement; and Baldwin Enterprises (collectively, "the Baldwins") appeal a circuit court order affirming a decision of the Arkansas Department of Transportation Relocation Assistance Appeal Hearing Panel ("DOT panel"). The circuit court found that substantial evidence supported the DOT panel's denial of the Baldwins' twenty-one claims for payment of moving and relocation expenses following a condemnation of their

commercial properties. For reversal, the Baldwins argue that (1) the circuit court erred in refusing to allow them to put on additional testimony during its judicial review of the DOT panel's order, and (2) substantial evidence does not support the DOT panel's rejection of seven of its substantive claims. We affirm the circuit court's order.

I. *Factual Background*

An Arkansas Department of Transportation ("DOT") highway-widening project along Highway 270 in Hot Springs included modifications at the intersection of Highways 270 and 227. As a result, the DOT condemned several commercial properties in the northeast quadrant of the intersection, known as "A B Corner," which was owned by the Baldwins. In the eminent-domain action that followed, the Baldwins were paid $2.95 million as just compensation for the property. The parties entered a consent judgment in that case, Garland County case number 26CV-18-103, and it is now closed.

In March 2017, the DOT determined that several businesses on the subject properties were eligible for relocation-assistance benefits. The Baldwins entered negotiations with the DOT concerning relocation expenses for Baldwin Dentistry, AA Laundromat, and a shopping center on the property leased to various businesses. As a result of the negotiations, the DOT paid the Baldwins more than $500,000.00 in relocation-assistance benefits but denied an additional $992,939.53 in relocation benefits and protective rents. On October 5, 2018, the Baldwins requested an appeal before a three-member DOT panel to present evidence regarding the denial of those additional benefits. A hearing was scheduled for June 27, 2019, before a DOT panel consisting of Mark Headley, district engineer for District Six;

Greg Davis, the DOT's Right of Way division head appointee; and David Long, the DOT's chief legal counsel staff attorney appointee. Long was appointed chair of the panel.[1]

The Baldwins' relocation-appeal hearing eventually was held on November 1, 2019. Dr. Baldwin appeared with his attorneys and presented twenty-one claims. He testified on his own behalf, and DOT Relocation Section Head Nate Williams testified for the DOT. Because the hearing could not be completed in one day, it resumed on January 10, 2020. On January 6, however, Dr. Baldwin's attorney, Ryan Applegate, emailed Williams to inform him that he "may call [DOT Relocation Coordinator] Stasia Broughton as a potential rebuttal witness." Applegate asked if the DOT would produce Broughton without a subpoena, and if it would not, then he sought guidance on having a subpoena issued to compel Broughton's appearance at the hearing. Long, the DOT panel chairman, responded that "[t]here is no statute authority providing the Arkansas Department of Transportation with the power to issue subpoenas." The following day, Long informed Applegate that he had asked Broughton if she was willing to testify, but Broughton had declined and stated that the agency file included all her correspondence and records in this matter. Long continued: "As [Broughton] was not a decision maker in deciding whether to approve or deny the several request[s] of the entities Dr. Baldwin represents[,] I do not think that she

---

[1]Dr. Baldwin did not appear at the June 27 hearing and informed the panel that he did not receive a hearing notice. The DOT panel deemed the appeal abandoned and dismissed it. On appeal to the Garland County Circuit Court, the parties entered an agreed order to remand for a new hearing. *Baldwin v. Ark. State Hwy Comm'n*, Garland County Circuit Court case No. 26CV-19-1107 (agreed order for remand).

would have anything relevant to offer. Pursuant to the ROW Operations Manual[,] the Relocation Section Head, Mr. Nate Williams, was responsible for making the initial decision to allow or deny the requested relocation expense."

When the hearing resumed on January 10, the emails between Long and Applegate were admitted into the administrative record as exhibits, but there was no further request made on Broughton's appearance. The DOT presented Williams's testimony on the Baldwins' substantive claims, and Dr. Baldwin testified on rebuttal. Both sides introduced hundreds of pages of exhibits into the administrative record before the hearing adjourned.

On March 18, 2020, the DOT panel denied relief on all claims in a twenty-two-page order. The Baldwins timely filed an appeal in Garland County Circuit Court. They sought a remand concerning several alleged errors and, alternatively, claimed that the DOT panel's order was not supported by substantial evidence. They also sought to present additional evidence under Arkansas Code Annotated section 25-15-212(f) & (g) (Supp. 2019).

On June 4, 2021, the circuit court denied the Baldwins' request to remand and for additional testimony. It found that the issue of additional witness testimony was unpreserved, that its review was confined to the record pursuant to section 25-15-212(g), and that any constitutional allegations were unpreserved.

4

Following briefing and oral argument, the circuit court entered an order on May 5, 2022, affirming the DOT panel's order.[2] It found that the DOT panel's findings were not arbitrary, capricious, or characterized by an abuse of discretion but, rather, were supported by substantial evidence. The Baldwins timely appealed the circuit court's order.

II. *Points on Appeal*

For reversal, the Baldwins argue that the circuit court erred in refusing to allow them to put on additional testimony and that substantial evidence does not support the DOT panel's rejection of seven of its substantive claims for additional relocation benefits.

This court's review under the Administrative Procedure Act ("APA") is directed not toward the circuit court but toward the decision of the agency. *Sexton v. Loc. Police and Fire Ret. Sys.*, 2016 Ark. App. 496, at 5, 506 S.W.3d 248, 251. This is so because administrative agencies are better equipped by their specialization, experience, and more flexible procedures to determine and analyze legal issues affecting their agencies. *Nash v. Ark. Elevator Safety Bd.*, 370 Ark. 345, 351, 259 S.W.3d 421, 425 (2007).

An appellate court's review of administrative decisions is limited in scope. An administrative decision will be upheld if it is supported by substantial evidence and is not arbitrary, capricious, or characterized by an abuse of discretion. *Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 326, 64 S.W.3d 241, 244 (2001). It is not the role of

---

[2]On appeal to the circuit court, the Baldwins abandoned claims 5, 12(a), 12(b), and 18. On appeal from the circuit court to this court, the Baldwins further reduced their number of claims to seven.

the appellate courts to conduct a de novo review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in the APA. *Id.*, 64 S.W.3d at 244–45. This court reviews the entire record to determine whether substantial evidence supports the agency's decision. *Jones v. Ark. Loc. Police & Fire Ret. Sys.*, 2018 Ark. App. 287, at 3, 550 S.W.3d 27, 29. The pertinent question is whether there is relevant evidence that a reasonable mind might accept as adequate to support the agency's conclusion. *Id.* The issue is not whether the appellate court would have made a different decision but whether reasonable minds could conclude as the agency did. *Id.* Our supreme court has held that "between two fairly conflicting views, even if the reviewing court might have made a different choice, the board's choice must not be displaced." *Pegasus*, 347 Ark. at 326, 64 S.W.3d at 245.

Either the circuit court or the appellate court may reverse or modify an agency's decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h).

The burden of proving an absence of substantial evidence is on the challenging party and requires a demonstration that the proof before the administrative agency was so nearly

undisputed that fair-minded persons could not reach its conclusion. *Bolding v. Ark. Pub. Emps. Ret. Sys.*, 2022 Ark. App. 275, at 6, 646 S.W.3d 696, 700. The credibility and the weight of the evidence are within the agency's discretion, and it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord that evidence. *Williams v. Ark. State Bd. of Physical Therapy*, 353 Ark. 778, 785, 120 S.W.3d 581, 586 (2003).

The requirement that the agency's decision not be arbitrary or capricious is less demanding than the substantial-evidence requirement. *Collie v. Ark. State Med. Bd.*, 370 Ark. 180, 187, 258 S.W.3d 367, 372 (2007). To be invalid as arbitrary or capricious, an agency's decision must lack a rational basis or rely on a finding of fact based on an erroneous view of the law. *Id.* Where the agency's decision is supported by substantial evidence, it automatically follows that it cannot be classified as unreasonable or arbitrary. *Id.* This court will not overturn an administrative agency's interpretation of its own regulation unless it is clearly wrong. *Nash*, 370 Ark. at 351, 259 S.W.3d at 425.

Additionally, in their first point on appeal, the Baldwins rely on Arkansas Code Annotated section 25-15-212(f) & (g), which states as follows:

> (f) If before the date set for hearing, application is made to the court for leave to present additional evidence and the court finds that the evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon any conditions which may be just. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court.

> (g) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency not shown in the record, testimony may be taken before the court.

A. Denial of Request to Permit Additional Testimony

The Baldwins first argue that the circuit court erred in refusing to let them present additional evidence in circuit court pursuant to Arkansas Code Annotated section 25-15-212(f) and (g). They argue that credibility issues were weighed by the DOT panel "without any real opportunity to test the credibility of ARDOT or its witnesses" because only Dr. Baldwin and Williams testified at the DOT panel hearing. The Baldwins point out that they sought to procure Broughton's appearance at the DOT panel hearing, but they were informed that the DOT had no subpoena authority. Subsequently, in circuit court, the Baldwins requested leave to present evidence from Broughton as well as another DOT employee, Lakeysha Walker, who was responsible for providing DOT notices to the Baldwins. They now argue that the circuit court's rejection of their request effectively denied them their right to due process and constituted an abuse of discretion.

In rejecting their request to present additional evidence under section 25-15-212(f), the circuit court found that

> [a]n email outside of the administrative hearing was the only occasion Petitioner mentioned Ms. Broughton's testimony. At the administrative hearing below, the agency file was admitted into evidence, containing Ms. Broughton's logs and work files with no objection from Petitioner. Testimony of other witnesses referred to Ms. Broughton's statements or actions with no objection from Petitioner. Petitioner made no argument regarding calling Ms. Broughton before resting his case. Petitioner asserted his right to cross-examine Ms. Broughton for the first time on appeal, and therefore, it was not preserved for appeal. Petitioner has never made a request to take the testimony of ARDOT employee Lakeysha Walker prior to today's hearing, neither in the proceedings below nor in his Petition for Review. The stated reason for her testimony is that she mails out notices. Such testimony would be

irrelevant, as the issue of notice is moot. The issue of additional testimony was not preserved for appeal.

The circuit court also rejected the Baldwins' reliance on section 25-15-212(g), noting that its review pursuant to that statute is confined to the record and that the statutory exception based on irregularities in procedure does not apply. It then rejected the Baldwins' asserted irregularities as follows:

a) Failure of notice, for which the case was already remanded by agreed order in this Court dated September 20, 2019, and which is *res judicata* to this matter, and is not an irregularity in procedure as contemplated by the statute. Further, this matter has already been re-tried in two full days of testimony, and Petitioner was not prejudiced by the alleged failure of notice for the first hearing;

b) The exclusion of testimony regarding the remand as irrelevant was proper, and is affirmed;

c) The illness of a witness on the day of the November 4, 2021, hearing was not an irregularity in procedure as contemplated by the statute;

d) The exclusion of a building log the day before the witness became ill was properly excluded from evidence as irrelevant, and was not an irregularity in procedure as contemplated by the statute; and

e) The exhibits reorganized on November 3, 2019, and re-submitted into evidence at the January 2020 hearing were properly admitted and not an irregularity in procedure as contemplated by the statute.

We see no abuse of discretion in the circuit court's rejection of these two statutory arguments. Under section 25-15-212(f), the circuit court *may* order that additional evidence be taken if the court finds that the evidence is material and that there were good reasons for failure to present it in the proceeding before the agency. Under section 25-15-212(g), testimony *may* be taken before the court in cases of alleged irregularities in procedure before

9

the agency not shown in the record. Both subsections leave the circuit court with discretion to allow the taking of additional evidence in certain circumstances. Although the Baldwins complain that credibility issues were weighed by the DOT panel "without any real opportunity to test the credibility of ARDOT or its witnesses," they did not object at the panel hearing to the introduction of Broughton's logs, work files, correspondence, or statements admitted through other witnesses. Additionally, as the circuit court noted, the Baldwins advanced no argument about Broughton before resting their case before the DOT hearing panel and never requested to take Walker's testimony at the administrative level. Further, although the Baldwins alleged irregularities in procedure under section 25-15-212(g) before the circuit court, they fail to challenge the circuit court's findings on those allegations in this appeal. Thus, the circuit court did not abuse its discretion in denying the Baldwins' requests under section 25-15-212(f) & (g).

To the extent the Baldwins also advance a constitutional argument, they asserted no due-process challenge at the administrative hearing but first made the argument in the circuit court. "[I]n an appeal originating from an agency decision yet involving a constitutional challenge, the constitutional challenge must be raised before the agency to preserve it for the circuit court's consideration." *W.N. v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 346, at 15, 552 S.W.3d 483, 492. The Baldwins point to *Helena-West Helena School District v. Davis*, 40 Ark. App. 161, 843 S.W.2d 873 (1992), in which the concurring judge noted:

> [T]here appears to be no procedural rules that provide for the subpoena power to compel witnesses to appear [at the administrative hearing]. Consequently, hearsay problems and confrontation problems are likely to occur in these proceedings. It is

10

difficult to have adequate due process, when there is no process at all prescribed by the rules that govern such hearings.

*Id.* at 165–66, 843 S.W.2d at 875 (Rogers, J., concurring). The concurring judge nonetheless agreed with the majority in that case that Davis's failure to raise the constitutional issue of the right to confront and cross-examine witnesses at the administrative level resulted in a waiver of that right. *Id.* at 165, 843 S.W.2d at 875. Similarly, the Baldwins did not raise a constitutional argument at the administrative level in this case. Thus, they have waived the issue in this appeal. For all of these reasons, we affirm the circuit court's refusal to permit the Baldwins to put on additional testimony.

B. Substantive Claims on Appeal

The Baldwins next seek reversal of the circuit court's order affirming the DOT panel's rejection of their request for payments pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("The Act"). The Act, as amended, states in pertinent part,

> § 4622. Moving and related expenses
>
> (a) General provision
>
> Whenever a program or project to be undertaken by a displacing agency will result in the displacement of any person, the head of the displacing agency shall provide for the payment to the displaced person of—
>
> (1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;
>
> (2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal

11

to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency;

(3) actual reasonable expenses in searching for a replacement business or farm; and

(4) actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site, but not to exceed $25,000, as adjusted by regulation, in accordance with section 4633(d) of this title.

42 U.S.C. § 4622(a). Although the Baldwins initially presented twenty-one claims, they advance only seven of those claims in this court.[3]

Claim 1: Protective Rents

In Claim 1, the Baldwins argue that the DOT panel erred in denying their claim for protective rents for several shopping-center units that were affected by the relocation. They acknowledge DOT payments totaling $42,071.91 in protective rents on several of the A B Corner units. They nonetheless claim that they were erroneously denied protective rents of $7,650 for Unit I and $9,750 for Unit D and the corner property, for a total of $17,400.

In rejecting this claim, the DOT found that

Dr. Baldwin did not offer any citation to the Uniform Relocation Act or the regulations promulgated thereto as codified in Title 49, Part 24 of the United States Code of Federal Regulations that required payment of protective rents to "any unit" in AB Corner. Further, Dr. Baldwin testified that there was not a lease executed by the Department for Unit I and did not testify at all regarding any lease for Unit D and the corner property. Dr. Baldwin's claim for protective rents for Unit I and Unit D and the corner property is devoid of any factual basis in the record, and appears to be based on his repeated demands for its payment. As stated in the Notice of Hearing it was Dr. Baldwin's burden to adduce evidence showing why ARDOT failed to properly consider Dr. Baldwin's eligibility for a relocation payment prescribed by the

_____

[3]For consistency, we address the claims on appeal as Claim numbers 1, 2, 3, 4, 13, 20, and 21 rather than by consecutive numbers, because that is how the claims were referenced below and in the parties' briefs in this court.

12

Uniform Act. . . . Because of his failure to adduce evidence to support this claim the hearing panel concludes that the Department properly denied this claim.

The Baldwins base their claim for protective rents primarily on a March 1, 2017 DOT email informing them that "[w]e will rent the units vacated by any business which we have made eligible for relocation assistance. Rent will be based on the current lease agreements." They assert that the DOT's unilateral decision not to honor its pledge to pay protective rent for tenants who vacated the Baldwins' property was "based solely on: (i) their dispute as to whether the Baldwin Parties had been paid from [a tenant] for Unit D in July and August 2017; and (ii) their apparent distrust of Dr. Baldwin and the Baldwin Parties counsel's statements that the fireworks stand had not rented."

Williams testified on this claim at the panel hearing. According to him, after the DOT had signed several leases, Dr. Baldwin, at a meeting, indicated his intent to store fireworks in one of the units, regardless of the terms of the lease. Williams testified that Dr. Baldwin asked him, "Just between you and me and the bed sheets, what would happen if I put fireworks into one of the storage units?" Williams reported that conversation to the Right of Way division head, who refused to sign a proposed rental agreement on Unit I. Dr. Baldwin was then asked by the DOT to confirm in writing that none of the units were used for fireworks storage, and according to Williams, Dr. Baldwin did not do so. Williams further testified that Dr. Baldwin submitted a request for the DOT to pay rent on Unit D during months that it remained rented by a tenant.

Although the Baldwins disputed Williams's testimony on this claim, the DOT panel clearly believed Williams's version of events because it found that the Baldwins' claim for protective rents on Unit I and Unit D and the corner property was "devoid of any factual basis in the record[.]" It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord to that evidence. *See Williams*, 353 Ark. at 785, 120 S.W.3d at 586.

Further, to the extent that the Baldwins now rely on 49 C.F.R. § 24.206(a) as authority for their claim, they made no argument involving that regulation before the DOT panel. We do not consider a new argument for the first time on appeal. *See, e.g., Parkman v. Sex Offender Screening & Risk Assessment Comm.*, 2009 Ark. 205, at 7, 307 S.W.3d 6, 11. In any event, that regulation pertains to relocation payments for evicted occupants of real property, not to "protective rents." Accordingly, substantial evidence supports the DOT panel's rejection of this claim, and we affirm it.

Claim 2: Loss of Tangible Personal Property

In Claim 2, the Baldwins allege insufficient payment for the loss of personal property used in operating AA Laundromat. They originally sought $226,114.35, and the DOT paid $149,200.[4] They appealed to the DOT panel seeking the difference—$77,184.35—and the

---

[4]The DOT panel noted in its order that when stating the amount the Baldwins received in loss of personal property for AA Laundromat, they claimed to have been paid $148,930, but that amount failed to account for the value of business personalty retained by the Baldwins valued at $270.

panel denied the claim. They appeal that denial, arguing that the amount of compensation paid on this claim was based on an undervalued estimate.

The parties agree that 49 C.F.R. § 24.301(g)(14), which provides payment for direct loss of tangible personal property incurred as a result of moving or discontinuing the business or farm operation, applies to this claim. Under the applicable version of that regulation, the payment shall consist of the lesser of (1) the fair market value in place of the item, as is for continued use, less the proceeds from its sale, or (2) the estimated cost of moving the item as is, but not including any allowance for storage; or for reconnecting a piece of equipment if the equipment is in storage or not being used at the acquired site. 49 C.F.R. § 24.301(g)(14) (eff. June 1, 2005, through June 2, 2024).

In rejecting their claim, the DOT panel found that

[o]n January 7, 2019, Dr. Baldwin engaged Asset Appraisal Corporation to determine the fair market value installed "as is" for continued use. This value was determined by Asset Appraisal to be $149,200. This appraisal was completed on February 25, 2019.

The Agency determined that the maximum moving cost, available if AA Laundromat chose to relocate and have its equipment reinstalled was $226,114.35. This estimate included disconnecting and unbolting of all equipment, transporting the equipment to a new location, and installing necessary plumbing, electrical connections, installing dryer ventilation, resetting and re-bolting of all equipment, and connecting the personalty to electrical and water connections, as well as the rebuilding of the dryer facade walls and cabinetry.

. . . .

Because $149,200 is less than $226,114.35, the Department correctly determined this payment and the hearing panel concludes that the Department properly denied this claim.

(Internal citations omitted.)

The Baldwins now argue that the DOT panel erroneously relied on an "undervalued estimate" by Asset Appraisal Corporation, who provided a "value as is for continued use," and it disregarded values provided by Scott Johnson of Complete Laundry, who provided a higher estimate. The Baldwins further argue that because they were not compensated through the eminent-domain settlement for the "plumbing, electrical, and other items of property used to operate the laundromat," they are compensable in this proceeding through relocation assistance. Thus, they seek $77,184.35, which is the difference between the $226,114.35 maximum moving cost and the $149,200 actually paid on this claim. Although the Baldwins seek a higher payment than the one they received from the DOT, their payment of $149,200 was the lesser of (i) the fair market value in place of the item, as is for continued use; or (ii) the estimated cost of moving the item. Accordingly, the payment complied with the requirements of 49 C.F.R. § 24.301(g)(14), and substantial evidence supports the DOT panel's rejection of their request for an additional $77,184.35 on this claim.

Claim 3: Relocation of Baldwin Dentistry Personal Property

In Claim 3, the Baldwins argue that substantial evidence does not support the DOT panel's denial of their claim for $191,748 for the relocation of personal property from Baldwin Dentistry's old location to its new location. Although the DOT paid $171,169.34 for relocation of personal property between dental-practice locations, the Baldwins contend that the DOT "had no experience whatsoever in moving a dental practice" and "drastically

shortchanged the Baldwin Parties on properly compensable relocation costs under applicable federal law."

As background on this claim, a list of the dental practice's personal property that needed to be moved was drafted during relocation negotiations. The list was agreed to in writing by Dr. Baldwin, his consultant from the Pinnacle Group, and the DOT relocation coordinator. Then the scope of the work necessary to relocate the inventoried personal property was finalized, and multiple vendors and bidders were called in to place their estimates on the different eligible moving-cost aspects for Baldwin Dentistry. According to Williams, some of the vendors were chosen by Dr. Baldwin, some by the Pinnacle Group, and some by the DOT. Bids were submitted on multiple aspects of the move, including costs to disconnect, reconnect, and install electrical equipment; costs to relocate or rebuild cabinets; costs to move artwork and other personal property; costs to unbolt and rebolt dental equipment; costs to disconnect, move, and reconnect IT equipment; plumbing costs for medical gases; and costs for disconnecting and moving plumbing equipment and installing nonmedical gas plumbing. Bids were selected for each category, and each of those winning bids was added together to arrive at the estimated moving cost of $171,169.34. At the DOT panel hearing, Williams explained the process of arriving at this total. He also explained that Dr. Baldwin agreed to abandon certain personal property and claim a payment for the loss of that property rather than move it.

On appeal to the DOT panel, the Baldwins alleged that the payment of $171,169.34 for moving the dental practice personal property was insufficient. They sought additional

17

payments for the following amounts: $88,000 for HVAC and duct work; $86,069 for additional electrical work; $3,280 for a door, a closet, and insulation in the medical-gas room; an additional $7,722 for medical-gas plumbing; $6,279 for a janitor's sink and x-ray equipment; $3,391 for emergency lights and fire-alarm system; and an additional $22,333 on plumbing plus an additional 10 percent contractor's fee for all the above-listed items. They also sought an additional $10,368 for moving IT equipment, $325 for moving artwork, and $2,165 for modifying cabinets to fit the new office. The DOT panel specifically addressed each of these requested payments and denied them for a variety of reasons, including that the Baldwins failed to demonstrate how they were not adequately paid under the applicable regulation, failed to demonstrate why the work should be considered as personalty (compensable) rather than realty (not compensable), and failed to identify modifications that were required by federal, state, or local law or ordinance to adapt the personal property to the replacement property.

Pursuant to 49 C.F.R. § 24.301(d)(1), the payment for a commercial move of personal property as determined by an inventory from a business is based on the lower of two bids or estimates prepared by a commercial mover. At the agency's discretion, payment for a low-cost or uncomplicated move may be based on a single bid or estimate. 49 C.F.R. § 24.301(d)(1). The following is also included as eligible actual moving expenses for personal property:

> (3) Disconnecting, dismantling, removing, reassembling, and reinstalling relocated household appliances and other personal property. For businesses, farms or nonprofit organizations this includes machinery, equipment, substitute personal property, and

18

connections to utilities available within the building; it also includes modifications to the personal property, including those mandated by Federal, State or local law, code or ordinance, necessary to adapt it to the replacement structure, the replacement site, or the utilities at the replacement site, and modifications necessary to adapt the utilities at the replacement site to the personal property.

49 C.F.R. § 24.301(g)(3).

On appeal to this court, the Baldwins cite this regulation and allege in a conclusory manner that all relocation expenses are fully compensable and that the DOT drastically shortchanged them on compensable relocation costs. They do not specifically address any of the DOT panel's findings or reasons for rejecting additional payments. Because the Baldwins have failed to adequately develop an argument challenging the DOT panel's rejection of additional payments, we affirm on this point. *See Reynolds v. Ark. Appraiser Licensing & Certification Bd.*, 2019 Ark. App. 587, at 13, 591 S.W.3d 837, 845.

Claim 4: Architect, Engineering, and Feasibility Studies

In Claim 4, the Baldwins argue that, although they were paid $18,952 for feasibility-study costs, the panel erroneously denied their claim for $187,359 associated with architectural and engineering work.

In rejecting this claim, the DOT panel found that

Claim number 4 is a reimbursement request for $187,359, which Dr. Baldwin claims as the difference between his incurred engineering ($25,000) and architect ($181,311) fees in connection with the construction at the replacement site totaling $206,311 and the amount the agency allowed for a feasibility study to determine suitability for the displaced person's business operation at the replacement site. Dr. Baldwin attempted to relate his $206,311 to an omission by the agency's appraiser in the condemnation appraisal but he fails to cite to any law or regulation that makes a condemnation appraisal for the land and structures the state took (for which he received $2,950,000, which was $1,228,350 over the agency's condemnation

19

determination of the fair market value of the state's acquisition[ ] relevant to any related non-residential eligible expense for professional services. 49 C.F.R. § 24.303(b). The agency properly calculated the professional fees owed for determining whether the Harmony Park site was suitable for business operations[,] and the remaining $187,359 are for ineligible expenses. The claim was properly denied.

(Internal transcript and exhibit citations omitted.)

The Baldwins point to 49 C.F.R. § 24.303 in support of their claim. The applicable version of that regulation states in relevant part:

> The following expenses, in addition to those provided by § 24.301 for moving personal property, shall be provided if the Agency determines that they are actual, reasonable and necessary:
>
> . . . .
>
> > (b) Professional services performed prior to the purchase or lease of a replacement site to determine its suitability for the displaced person's business operation including but not limited to, soil testing, feasibility and marketing studies (excluding any fees or commissions directly related to the purchase or lease of such site). At the discretion of the Agency a reasonable pre-approved hourly rate may be established. (See appendix A, § 24.303(b).

49 C.F.R. § 24.303(b) (eff. Jan. 4, 2005, through June 2, 2024).

We see no error in the DOT panel's denial of this claim for several reasons. First, although 49 C.F.R. § 24.303(b) lists feasibility studies as a reimbursable expense, it does not address architectural and engineering work. Second, Williams testified that the DOT fully examined this claim and relied on their consultant, O.R. Colan and Associates ("O.R. Colan"), who conducted a comprehensive review of the materials submitted by the Baldwins and opined on which expenses may be eligible as relocation expenses. O.R. Colan concluded that "[t]he need for detailed drawings and surveys is directly related to the new construction.

20

They do not qualify under 303(b) as they are not necessary for determining suitability. These expenses contribute to the value of the asset. Under 304(b)(1), the purchase of capital assets is an ineligible expense as reestablishment." According to Williams, the DOT agreed with O.R. Colan's opinion that the architectural and engineering designs did not qualify as suitability studies. Given Williams's testimony and the language of the applicable regulation, reasonable minds could reach the same conclusion on this claim as the DOT panel. *See Jones*, 2018 Ark. App. 287, at 3, 550 S.W.3d at 29. Thus, we affirm the denial of this claim.

Claim 13: Costs to Comply with City Codes

For Claim 13, the Baldwins argue that substantial evidence does not support the DOT panel's rejection of payment to ensure that the entire replacement property complied with city codes. They sought a total of $156,977.52 in this claim, which included $142,707.52 for storm-drain filters, sidewalks at the property line, steel drain covers, storm drain and retention, fire-rated sheathing, fire-rated foam insulation, dumpster pad and enclosure, and fire-rated stairway and doors as well as a 10 percent contractor's fee of $14,270.00.[5] The Baldwins assert that, as a result of the DOT's eminent-domain action, they were "faced with the only option of building a new building[,]" and installation of the above-listed items was mandatory in order to meet applicable city and state building codes. They

---

[5]On appeal, the Baldwins allege that they sought a total of $143,786.80 for this claim, but because we are reviewing the DOT panel's findings, and they sought a total of $156,977.52 in Claim 13 before the DOT panel, we refer to the latter amount.

argue that payment was appropriate pursuant to 49 C.F.R. § 24.301(g)(11), and the panel erred in denying their claim.

In rejecting this claim, the DOT panel found that

[Baldwin] relies on 49 C.F.R. § 24.301(g)(l1) to support his request. But, Dr. Baldwin testified that these costs were required for "building the building." . . .Since these are costs related to physical changes of the real estate at the replacement location, and are capital expenses, the Panel finds these costs are ineligible under both 49 C.F.R. § 24.301(h)(l0) and 49 C.F.R. § 24.304(b)(1) and that this claim was properly considered and denied by the Department.

The following regulations are pertinent to this court's review of this claim. The version of 49 C.F.R. § 24.301(g)(11) in effect at the relevant time period stated that eligible actual moving expenses under the Act included

(11) Any license, permit, fees or certification required of the displaced person at the replacement location. However, the payment may be based on the remaining useful life of the existing license, permit, fees or certification.

49 C.F.R. § 24.301(g)(11) (eff. June 1, 2005, through June 2, 2024). Further, 49 C.F.R. § 24.301(h)(10) stated that a displaced person is not entitled to payment for "[p]hysical changes to the real property at the replacement location of a business or farm operation except as provided in §§ 24.301(g)(3) and 24.304(a)[.]" 49 C.F.R. § 24.301(h)(10) (eff. June 1, 2005, through June 2, 2024). Finally, under 49 C.F.R. § 24.304(b)(1), certain expenses were not covered:

Ineligible expenses. The following is a nonexclusive listing of reestablishment expenditures not considered to be reasonable, necessary, or otherwise eligible:

(1) Purchase of capital assets, such as office furniture, filing cabinets, machinery, or trade fixtures.

22

Substantial evidence supports the panel's rejection of this claim. Although the Baldwins maintained that the construction of a new building was their only option, they did not dispute that their costs on this claim were related to code compliance on the newly constructed building. At the hearing, Williams testified that "construction of buildings are considered to be capital assets, and expenditures on new construction are not eligible. . . . The regulations state that they are not eligible. What is eligible is the cost to move the personal property." He elaborated that specific modifications that are necessary to reinstallation of personal property are also eligible relocation costs. However, the costs requested on this claim appear to be for purchases to ensure code compliance on the new construction. Under the regulations cited above, reasonable-minded persons could have reached the conclusion made by the DOT panel on this claim. *See Jones*, 2018 Ark. App. 287, at 3, 550 S.W.3d at 29. Thus, substantial evidence supports its decision, and we affirm it.

Claim 20: Signs and Stationery

The Baldwins next argue that substantial evidence does not support the DOT panel's rejection of their claim for reimbursement of $7,794.79 for a temporary sign and construction of permanent signage for Baldwin Dentistry at the new building. They claim that, due to Baldwin Dentistry's forced relocation, new signage was compensable pursuant 49 C.F.R. § 24.301(g)(13) "as it was impossible for the sign at the condemned site to be moved to the replacement property."

The DOT panel rejected the Baldwins' claim and their reliance on 49 C.F.R. §24.301(g)(13), finding that

23

[i]n the event that 49 C.F.R. § 24.301(g)(l3) should apply there was no testimony that this sign was obsolete, but only that Dr. Baldwin considered it inappropriate.

However, this claim was denied because the Department found the applicable code provision was 49 C.F.R. § 24.304 and the expense was therefore ineligible. Mr. Williams testified that "there was not a re-lettering of a sign, it was a new sign that was built. The construction and installation costs for exterior signing to advertise the business is an eligible re-establishment expense.". . . Mr. Williams further testified that "the full re-establishment payment has already been paid to Baldwin Dentistry. And that's why that amount could not be approved."

The Panel agrees that 49 C.F.R. § 24.304 is the applicable provision, and because Dr. Baldwin had already received the maximum payment for the re-establishment of his dental practice, that this claim was properly denied.

At the time, 49 C.F.R. § 24.301(g)(13) included as an eligible moving expense "[r]elettering signs and replacing stationery on hand at the time of displacement that are made obsolete as a result of the move." 49 C.F.R. § 24.301(g)(13) (eff. June 1, 2005, through June 2, 2024). Additionally, under 49 C.F.R. § 24.304,

In addition to the payments available under §§ 24.301 and 24.303 of this subpart, a small business, as defined in § 24.2(a)(24), farm or nonprofit organization is entitled to receive a payment, not to exceed $10,000, for expenses actually incurred in relocating and reestablishing such small business, farm or nonprofit organization at a replacement site.

(a) Eligible expenses. Reestablishment expenses must be reasonable and necessary, as determined by the Agency. They include, but are not limited to, the following:

. . . .

(3) Construction and installation costs for exterior signing to advertise the business.

49 C.F.R. § 24.304 (eff. Jan. 4, 2005, through June 2, 2024).

24

We agree with the DOT panel's conclusion that 49 C.F.R. § 24.304(a)(3) is the applicable regulation. As Williams testified at the DOT panel hearing, "[T]here was not a re-lettering of a sign, it was a new sign that was built. The construction and installation costs for exterior signing to advertise the business is an eligible reestablishment expense." According to Williams, the full reestablishment payment had already been paid to Baldwin Dentistry, and for that reason, the claim could not be approved. Because the claim was for construction of new signage, which is an eligible reestablishment expense pursuant to 49 C.F.R. § 24.304(a)(3), and the maximum reestablishment expense had already been paid, substantial evidence supports the DOT panel's denial of Claim 20.

Claim 21: Reestablishment and Search Costs—Exclusion of Entities

In their final claim, the Baldwins argue that substantial evidence does not support the DOT panel's denial of their claim for $82,000 in reestablishment and search costs. The DOT panel rejected their allegation that the relocation of the shopping center at A B Corner involved four separate displaced landlords, each of which was entitled to reestablishment and search payments. The Baldwins claim that the DOT panel erroneously relied on 49 C.F.R. § 24.305(b) to conclude that there was only one displaced landlord business entitled to reestablishment and search-cost payments.

Some additional background is necessary on this claim. In March 2017, the DOT initially informed the Baldwins that landlords are eligible for reestablishment assistance pursuant to 49 C.F.R. § 24.304 and that it had determined Baldwin Enterprises to be the

displaced-landlord business associated with the shopping center.[6] Dr. Baldwin requested, via e-mail, that three additional parties be made eligible for reestablishment payments, for a total of four landlord businesses displaced by the DOT's acquisition of the shopping center:

1. Alton Baldwin Family Trust ½ and Steve A. Baldwin Family Trust ½
2. Joan Baldwin Family Trust ½ and Steve A. Baldwin Family Trust ½
3. Steve A. Baldwin Family Trust
4. Baldwin Enterprises

Dr. Baldwin explained that "[t]hese owners['] primary businesses are rental[,]" and he contended that each of these entities should be entitled to reestablishment payments because there are four distinct land tracts on the subject property, and tax records indicated the separate ownerships.

The DOT disagreed and determined that the acquisition of A B Corner represented the displacement of a single landlord business. In analyzing the number of displaced businesses eligible for reestablishment payments, the DOT utilized 49 C.F.R. § 24.305(b), which provides guidance on determining the number of businesses entitled to a fixed payment.[7] The Baldwins appealed that determination to the DOT panel, and it denied their

---

[6]According to the "Partnership Resolution of Authority" obtained by the DOT, Baldwin Enterprises is an Arkansas general partnership consisting of Joan A. Baldwin, trustee of the Alton Baldwin Residuary Family Trust; and Steve A. Baldwin, trustee of the Steve A. Baldwin Family Trust.

[7]The DOT explained that although owners of rental property are not entitled to fixed payments, Arkansas, like other states, utilizes the framework set forth in 49 C.F.R. § 24.305(b) to establish the number of eligible displaced businesses for purposes of 49 C.F.R. § 24.304.

appeal, found that there was a singular landlord business, and adopted the DOT's rationale for that decision. The circuit court affirmed that decision.

Again, 42 U.S.C. § 4622 provides that actual and reasonable expenses necessary to reestablish a small business at its new site shall not exceed $25,000, "as adjusted by regulation." 42 U.S.C. § 4622(a)(4). Reestablishment expenses must be reasonable and necessary, as determined by the agency. 49 C.F.R. § 24.304. The regulations define a small business as a business having not more than five hundred employees working at the site being acquired or displaced by a program or project, which site is the location of economic activity. 49 C.F.R. § 24.2(a)(24) (eff. Jan. 4, 2005, through June 2, 2024). Additionally, a business is entitled to reimbursement for actual expenses, not to exceed $2,500, as the Agency determines to be reasonable, which are incurred in searching for a replacement location. 49 C.F.R. § 24.301(g)(17) (eff. June 1, 2005, through June 2, 2024). Under 49 C.F.R. § 24.305(b), in determining whether two or more displaced legal entities constitute a single business, which is entitled to only one fixed payment, all pertinent factors shall be considered, including the extent to which

    (1) The same premises and equipment are shared;

    (2) Substantially identical or interrelated business functions are carried out and business and financial affairs are commingled;

    (3) The entities are held out to the public, and to those customarily dealing with them, as one business; and

    (4) The same person or closely related persons own, control, or manage the affairs of the entities.

49 C.F.R. § 24.305(b). Because the DOT panel did not make findings on this claim but adopted the DOT's rationale, we must look to its analysis, which is set forth in a 2018 memorandum from Williams to the Right of Way division head. He explained that the DOT applied the four-factor analysis in 49 C.F.R. § 24.305(b). On the first factor—whether the same premises or equipment was shared—the DOT found:

> Although separate ownerships are present, the construction of the two buildings side by side and the advertisement of both buildings as A B Corner consolidates multiple parcels into a single use. Both buildings share the same address. Unit designations are not separated. Units are designated A - Q across both buildings and the land.

On the second factor—whether substantially identical or interrelated business functions are carried out and business and financial affairs are commingled—the DOT found that "[a]ll business functions generate income from occupants of A B Corner." On the third factor—whether the entities are held out to the public, and to those customarily dealing with them, as one business—the DOT found that "[t]he shopping center is held out to the public as A B Corner. Signage on each building and on the land displays the name A B Corner. The trusts are not held out to the public as businesses." On the fourth factor—whether the same person or closely related persons own, control, or manage the affairs of the entities—the DOT found:

> Dr. Steve Baldwin is trustee of the Steve A. Baldwin Family Trust, which is shown to have an ownership interest in all of the underlying land. Joan Baldwin is closely related to Dr. Steve Baldwin, as she is his mother. Dr. Steve Baldwin is shown to control and manage the affairs of A B Corner. Dr. Baldwin is the signatory on all of the leases provided to the Department and he has provided e-mails between himself and tenants of A B Corner demonstrating that he is the negotiator of the leases. . . .

> The question of whether the separate landowners should be eligible for separate entitlements as displaced businesses is considered. There are many different

28

structures related to ownership of rental property. In these structures, the principal(s) may hold an interest in either the property itself or they may hold interest in a business entity or partnership that holds ownership of the property. There are also many different structures for ownership of a business wherein multiple parties hold an ownership interest in the business itself. In these cases, the business is the entity that is eligible for relocation assistance, regardless of the number of owners. The owners of the business themselves are not individually eligible for relocation assistance.

On appeal to this court, the Baldwins do not challenge the DOT panel's findings on the four factors. Instead, they argue that the DOT panel improperly relied on 49 C.F.R. § 24.305(b). They did not advance that argument before the DOT panel. To the contrary, when asked for the legal justification for Claim 21 at the DOT panel hearing, the Baldwins' attorney pointed to 49 C.F.R. § 24.304, 49 C.F.R. § 24.2(a)(24), and 49 C.F.R. § 24.305(b). Williams then relied extensively on 49 C.F.R. § 24.305(b) during his testimony, without objection. The Baldwins first raised this argument in the circuit court. However, it is essential to judicial review under the APA that issues must be raised before the administrative agency appealed from or they will not be addressed by this court. *Mills v. Ark. Loc. Police & Fire Ret. Sys.*, 2024 Ark. App. 279, at 8, 688 S.W.3d 485, 490. Because the Baldwins failed to challenge the DOT's reliance on 49 C.F.R. § 24.305(b) at the administrative level, we do not address it. We therefore affirm on this point.

III. *Conclusion*

For the reasons stated above, we affirm the circuit court's order in this administrative appeal.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*The Applegate Firm, PLLC*, by: *Ryan J. Applegate*; and *Lassiter & Cassinelli*, by: *Timothy J. Giattina*, for appellants.

*Trella A. Sparks*, Arkansas Department of Transportation Legal Division, for appellee.